1997-NMCA-051

940 P.2d 478

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Gilbert APODACA, Defendant–Appellant.**

**No. 16894.**

Court of Appeals of New Mexico.

April 30, 1997.

Certiorari Denied June 3, 1997.

Tom Udall, Attorney General, Santa Fe, Steven S. Suttle, Assistant Attorney General, Albuquerque, for Appellee.

T. Glenn Ellington, Chief Public Defender, Christopher Bulman, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

HARTZ, Chief Judge.

(1) Defendant contends that he has been acquitted of the charge of criminal sexual penetration (CSP) in the second degree and that the prohibition against double jeopardy precludes the State from retrying him on that charge. He appeals from the denial of his motion for entry of a verdict of not guilty on the CSP charge and from an order that declared a mistrial and ruled that the State had the right to retry him on the charge. We hold that Defendant has the right to appeal from the order permitting a new trial, but we affirm the order because Defendant was not acquitted of the CSP charge.

## I. FACTS

(2) Defendant was indicted and tried on three charges: Count I—CSP, Count II—kidnapping, and Count III—aggravated assault with intent to commit a violent felony. The jury received lesser-included-offense instructions on all three counts. After lengthy deliberations the jury sent a note to the trial judge that it was deadlocked.

(3) The judge called the jury back to the courtroom. The judge, the prosecutor, and defense counsel had previously agreed that rather than polling each juror on each charge, the judge would ask the foreman for the vote count on each charge and then ask the other jurors as a group whether the count was correct. On Count I the jury had been instructed that it could return three possible verdicts—guilty of CSP, guilty of battery, or not guilty. The following exchange took place:

Judge: Mr. Foreman, has the jury reached a verdict on Count I?

Foreman: No, Your Honor, we have not.

Judge: Okay. And regarding the charge of criminal sexual penetration, what was the vote? Can you tell me the vote or the split?

Foreman: For the entire—or just for just—

Judge: Count I.

Foreman: Count I.

Judge: And we have three—we have three possible verdicts.

Foreman: And you want the vote for each part?

Judge: Yes.

Foreman: Okay. The vote for the first part was zero for guilty and all for not guilty, by the final count. There was some deliberation, and there is one juror that may come back to that. Do you want me to explain the—

Judge: Okay. Well, let me just ask, is that on the criminal sexual penetration charge?

Foreman: That's right.

Judge: Okay. And then we have the next possible [charge] if there was, on battery.

Foreman: Six-six.

Judge: Okay. And then not guilty?

Foreman: I'm sorry. Six-six for—six for guilty of battery, six for not guilty.

Judge: Right. And then for the possibility of not guilty?

Foreman: It's the same. Six—six for not guilty, and six for—

Judge: Okay. Six for not guilty. Okay. Then—okay. Now, do all the jurors agree as to the vote on—regarding the possible verdicts on Count I?

Jury: [Jurors respond in the affirmative.]

Judge: Anybody have a different recollection?

Jury: No.

(4) The judge then proceeded to ask the foreman about Counts II and III. On Count II the jury unanimously voted for acquittal of kidnapping, but there were four votes for a guilty verdict on the lesser included offense of false imprisonment. On Count III the jury voted unanimously for acquittal of aggravated assault with intent to commit a violent felony and the lesser included offense of aggravated assault with a deadly weapon, but it deadlocked six to six on the second lesser included offense of simple assault.

(5) The judge then called a bench conference with counsel. The prosecutor stated that she wished to inquire into what the foreman meant by saying "there is one juror that may come back to that" with respect to the CSP charge. Despite defense counsel's objection, the judge agreed and questioned the foreman in open court:

Judge: Mr. Foreman, I just want to make certain that we are in agreement on how these votes were. On Count I, the CSP, the battery, and the not guilty, was a vote of zero, six and six. Is that correct?

Foreman: Yes, Your Honor.

Judge: Okay. And you also indicated though that one person may come back on that?

Foreman: There is—there is at least one juror who still had—I think at times was voting guilty of sexual penetration, the first—the first count. And that individual—

Judge: And so then that—

Foreman: In other words, I think if the vote was taken only on [the CSP count], the vote may be one guilty, five guilty of battery, six not guilty, if it's only on that one charge.

Judge: Just as to Count I? I think we need to have you go and take that vote and report back because I'm not sure that this is a definite vote on the Count I.

Foreman: Okay.

After deliberating an additional three minutes, the jury reported a vote on Count I of seven for acquittal, four for guilty of battery, and one for guilty of CSP. The judge orally declared a mistrial.

(6) Two weeks later Defendant moved for entry of a verdict of not guilty to the CSP charge in Count I, contending that the jury had unanimously voted for acquittal. The district court did not enter an order specifically denying the motion, but it later entered an Order Declaring Mistrial which recited that the jury had acquitted Defendant of kidnapping, aggravated assault with intent to commit a violent felony, and aggravated assault with a deadly weapon, and that the State could retry Defendant on the charges of CSP, false imprisonment, and assault.

## II. RIGHT TO APPEAL

(7) The first issue we must address is whether Defendant has the right to appeal at this time from the order permitting the State to try him again on the CSP charge. There is no doubt that Defendant could raise his double jeopardy claim on appeal after a second trial if he were convicted of CSP. *See State v. Breit*, 122 N.M. 655, 658, 930 P.2d 792, 795 (1996). The question is whether he must await the outcome of a new trial or can appeal at this time. We note that ordinarily there is no right to appeal an order granting a new trial in a civil action. *See* Rule 12–201(D) NMRA 1997 ("An order granting a motion for new trial in civil cases is not appealable and renders any prior judgment non-appealable."); *cf. Rhein v. ADT Automotive*, 122 N.M. 646, 649–51, 930 P.2d 783, 786–88 (1996) (granting writ of superintending control to permit "appeal" of order granting new trial). But whether there is a right to appeal in the present circumstances is a matter of first impression in New Mexico. *Cf. State v. Mestas*, 93 N.M. 765, 767, 605 P.2d 1164, 1166 (Ct.App.1980) (defendant appealed from order denying motion to dismiss charges on double jeopardy grounds; court treats docketing statement as application for interlocutory appeal and grants the application); *State v. Pacheco*, 115 N.M. 325, 327, 850 P.2d 1028, 1030 (Ct.App.1993) (dictum that *Mestas* held that denial of motion to dismiss on double jeopardy grounds is not appealable as a final order).

(8) Our discussion will proceed as follows. Because, as Defendant points out, federal courts would grant Defendant an absolute right to appeal under what is called the "collateral order doctrine," we examine the basis of federal law. Next, we discuss how New Mexico's version of the collateral order doctrine differs from the federal version. We note that the New Mexico version does not afford an absolute right to appeal, and it may not even apply to criminal appeals. Finally, we hold that, regardless of the collater-

al order doctrine, Defendant has an absolute right to appeal under New Mexico's constitutional provision granting every aggrieved party a right to one appeal.

(9) Federal law was settled in *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The defendants in *Abney* moved to dismiss an indictment on the ground that retrial would expose them to double jeopardy. (Defendant's motion for verdict of acquittal in this case was, in practical effect, identical to the motion in *Abney.*) Applying the collateral order doctrine, *Abney* held that a pretrial order rejecting a defendant's double jeopardy claim is a "final decision" and therefore appealable. *Abney,* 431 U.S. at 662, 97 S.Ct. at 2041–42; *see* 28 U.S.C. § 1291 (federal courts of appeals have jurisdiction to review "all final decisions of the district courts"). Under the collateral order doctrine a prejudgment order issued during the course of lower-court proceedings may nevertheless be appealable as a final decision if the order "conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment." *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 431, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985) (internal quotation marks deleted).

(10) *Abney* found all three conditions to be satisfied. First, the order denying the defendants' motion was a "fully consummated decision"; there were no further steps (other than moving for reconsideration) that could be taken in district court to avoid trial on double jeopardy grounds. 431 U.S. at 659, 97 S.Ct. at 2040. Second, the double jeopardy issue was collateral to and separable from the principal issue—whether defendant was guilty; the merits of the double jeopardy claim were in no way dependent upon the defendants' guilt or innocence. *Id.* at 659–60, 97 S.Ct. at 2040–41. Third, the rights conferred by the double jeopardy clause would be significantly undermined if the appeal were postponed. The double jeopardy clause protects not only against being punished a second time but also "against being twice put to *trial* for the same offense." *Id.* at 661, 97 S.Ct. at 2041.

(11) Despite the force of the policies supporting *Abney,* we hesitate to follow that decision. First, although the New Mexico Supreme Court has expressed substantial agreement with the collateral order doctrine in civil cases, it has not recognized a right to appeal from orders that satisfy the collateral order doctrine. *See Carrillo v. Rostro,* 114 N.M. 607, 845 P.2d 130 (1992). Rather, our Supreme Court has stated that an order satisfying the requirements of the collateral order doctrine is to be reviewed only pursuant to an application for a writ of error, which confers discretion on the appellate court to grant or deny review. *Id.* at 616–19, 845 P.2d at 139–42; Rule 12–503 NMRA 1997. Because New Mexico law provides the right to appeal a "final decision" in civil cases, *see* NMSA 1978, § 39–3–2 (Repl.Pamp. 1991) (aggrieved party may appeal from "final judgment or decision"), we must conclude that our Supreme Court has not adopted the view of the United States Supreme Court that an order satisfying the collateral order doctrine is a "final decision." *But cf. Carrillo,* 114 N.M. at 613, 845 P.2d at 136 (stating that the jurisdictional question in the case was whether the challenged order was a "final decision"). At most, *Carrillo* would permit us to treat Defendant's notice of appeal as an application for a writ of error. *See id.* at 619, 845 P.2d at 142.

(12) Another difficulty with applying the collateral order doctrine here is that the language in the New Mexico statute authorizing appeals in criminal cases differs from the statutory language relied upon for application of the collateral order doctrine. In federal court, appeals in civil and criminal cases are permitted from "final decisions." 28 U.S.C. § 1291. Similarly, in New Mexico civil cases, appeals are permitted from "final judgments or decisions." *See* § 39–3–2. In New Mexico criminal cases, however, the comparable right to appeal is only from "the entry of any final judgment." NMSA 1978, § 39–3–3(A)(1) (Repl.Pamp.1991). As the United States Supreme Court noted in *Abney,* every final judgment is a final decision, but not every final decision is a final judgment. 431 U.S. at 658, 97 S.Ct. at 2039–40. We question whether an order denying a

motion to dismiss a charge on double jeopardy grounds constitutes a final "judgment." *See Mestas,* 93 N.M. at 767, 605 P.2d at 1166. *But cf. Abney,* 431 U.S. at 660, 97 S.Ct. at 2040–41; *Harris v. Washington,* 404 U.S. 55, 56, 92 S.Ct. 183, 184, 30 L.Ed.2d 212 (1971) (per curiam) (Supreme Court had certiorari jurisdiction to review order rejecting pretrial plea of former jeopardy when applicable statute, 28 U.S.C. § 1257, permitted certiorari review of "[f]inal judgments or decrees"). It is not clear to us whether our Supreme Court would apply the collateral order doctrine as it did in *Carrillo* when the statutory authority for appellate jurisdiction is restricted to final *judgments.*

(13) In any event, we need not resolve that matter. There is an independent ground for Defendant's right to appeal. The New Mexico Constitution provides that "an aggrieved party shall have an absolute right to one appeal." N.M.Const. art. VI, § 2. (We note that this provision was not considered in *Carrillo,* so it remains to be decided whether Article VI, Section 2 provides an absolute right to appeal an order satisfying the collateral order doctrine.) In *State v. Chavez,* 98 N.M. 682, 652 P.2d 232 (1982), our Supreme Court held that this constitutional provision permits the state to appeal an order granting a new trial in a criminal case. We quote in full the discussion of the matter by the Court:

> We hold that under article VI, section 2 of the New Mexico Constitution, the State may appeal this order granting a new trial. At stake here is the State's strong interest in enforcing a lawful jury verdict. We hold that when the jury reaches a verdict after a trial which is fair and free from error, and such a verdict is set aside, the State is aggrieved within the meaning of the New Mexico Constitution.

*Id.* at 683, 652 P.2d at 233. The New Mexico Supreme Court recently reaffirmed its holding in *Chavez* except to state: "[W]e limit an immediate appeal to an order in which it is claimed the grant of a new trial was based on an erroneous conclusion that prejudicial legal error occurred during the trial or that newly-discovered evidence warrants a new trial."

*State v. Griffin,* 117 N.M. 745, 750, 877 P.2d 551, 556 (1994).

(14) Neither the rationale nor the holding in *Chavez,* nor the rationale for the limitations set forth in *Griffin,* is totally clear to us. After all, as noted in *Griffin,* 117 N.M. at 750, 877 P.2d at 556, the state could vindicate its interest by appealing after conclusion of the new trial. Even if the defendant is acquitted at the second trial, the prohibition against double jeopardy would not preclude an appeal from the acquittal and reinstitution of the original guilty verdict if the district court had erred in granting a new trial. *See id.*

(15) Despite our uncertainty about the rationale of *Chavez* and *Griffin,* we are confident that those decisions compel granting a defendant the right to appeal an order denying a motion to dismiss on double jeopardy grounds. They stand for the proposition that the constitutional right to appeal must be given a practical construction. *Cf. Kelly Inn No. 102 v. Kapnison,* 113 N.M. 231, 236, 824 P.2d 1033, 1038 (1992) (the term "finality" is given practical construction in determining right to appeal). Some interests cannot be adequately protected if an appeal of a ruling adverse to such an interest must await the entry of judgment. Although Article VI, Section 2 speaks of the right to *one* appeal, more than one appeal may be necessary in a single case to serve the purpose of the constitutional provision. For example, certainly a defendant who has successfully appealed a conviction would have a constitutional right to appeal if the retrial also resulted in a conviction.

(16) The difficulty is in determining what interests justify invocation of the constitutional right to appeal when final judgment has not yet been entered. Such interests must be of the greatest importance, given the countervailing powerful interest in avoiding piecemeal appeals. *See Baca v. Atchison, Topeka & Santa Fe Ry.,* 121 N.M. 734, 736–38, 918 P.2d 13, 15–17 (Ct.App.), *cert. quashed,* 121 N.M. 783, 918 P.2d 369 (1996). The *Chavez* Court relied on "the State's strong interest in enforcing a lawful jury verdict." 98 N.M. at 683, 652 P.2d at 233. Equally compelling is a defendant's constitu-

tional right not to be subjected to double jeopardy. Moreover, unlike the State's interest in a lawful conviction, which could be vindicated upon appeal after a second trial, a defendant's right not to be subjected to a second trial for the same offense could not be remedied once the second trial has taken place. *See Abney*, 431 U.S. at 660–62, 97 S.Ct. at 2040–42.

(17) We therefore hold that a defendant has a constitutional right to appeal from an order denying a motion to dismiss a charge on the ground that trial of the charge would subject the defendant to double jeopardy. Because we construe Defendant's motion in this case as in essence a motion to dismiss the CSP charge on that ground, we have jurisdiction to hear Defendant's appeal.

## III. WAS THERE AN ACQUITTAL?

(18) Rule 5–611 NMRA 1997 governs the return of a verdict in a criminal case. The pertinent provisions state:

A. **Return.** The verdict shall be unanimous and signed by the foreman. It shall be returned by the jury to the judge in open court.

. . . .

E. **Poll of jury.** When a verdict is returned and before it is recorded, the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations.

The typical case presents no difficulty. The signed verdict form is delivered to the trial judge, and when each of the 12 jurors is asked "Is this your verdict?" each answers "Yes." The issue before us on this appeal is the extent of the trial judge's authority when the return of the verdict does not proceed so smoothly.

(19) Defendant does not contend that it is improper for the trial judge to send the jury back for further deliberations if one of the jurors answers "No" during the jury poll. But he suggests that in any other circumstance the judge must enter the verdict. He argues that the foreman announced unanimity for acquittal on the CSP charge and that

even if the foreman's later comments created some uncertainty, "any uncertainty was resolved by the dissent-free poll."

■ (20) We disagree. The role of the trial judge is to render justice, not to act as an automaton with no more discretion than a voting machine. The judge is entitled to satisfy herself that the jurors have truly rendered a unanimous verdict. The judge's concern may arise from words uttered by a juror, the improbability of a particular verdict or combination of verdicts, or even a juror's demeanor. In *State v. Holloway*, 106 N.M. 161, 740 P.2d 711 (Ct.App.1987), we reversed a conviction because of the trial judge's failure to inquire further about a juror's statement during the jury poll indicating that the juror did not fully agree with the verdict. We explained:

In any case upon the appearance of any uncertainty or contingency in a jury's verdict, it is the duty of the trial judge to resolve that doubt, for "[t]here is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination." *Cook v. United States*, 379 F.2d 966, 970 (5th Cir. [1967] )[.]

*Id.* at 165, 740 P.2d at 715 (quoting *United States v. Morris*, 612 F.2d 483, 489 (10th Cir.1979)).

(21) Other state courts agree.

When there is uncertainty as to the actual intent of the jury, the power of the court in a criminal case to return them to their room to render a clear and unambiguous verdict is, in this country, recognized as indispensable to an orderly and impartial administration of justice.

*State v. Searles*, 113 Conn. 247, 155 A. 213, 216 (1931); *see, e.g., Robinson v. State*, 180 Ga.App. 43, 348 S.E.2d 662, 671 (jury form was ambiguous), *rev'd on other grounds*, 256 Ga. 564, 350 S.E.2d 464 (1986); *State v. Manipon*, 70 Haw. 175, 765 P.2d 1091 (1989) (jury completed verdict form finding defendant not guilty of lesser included offense but submitted no jury form on the charged offense; after judge directed jury to continue its deliberations, jury found defendant guilty of the charged offense); *People v. Almo*, 108 Ill.2d 54, 90 Ill.Dec. 885, 889, 483 N.E.2d 203,

207 (1985) (jury returned verdicts of guilty on both murder and voluntary manslaughter when defendant could be guilty of only one of the two offenses); *Lattisaw v. State*, 329 Md. 339, 619 A.2d 548, 551 (1993) (stating general rule that trial judge should not accept verdict that is "ambiguous, inconsistent, unresponsive, or otherwise defective"); *Anderson v. State*, 231 Miss. 352, 95 So.2d 465, 467 (1957) ("[T]he court may require the jury to clear up an indefinite and ambiguous verdict."); *State v. Peters*, 855 S.W.2d 345 (Mo.1993) (en banc) (initial verdict found defendant guilty of compound offense but not guilty of predicate offense); *Bush v. State*, 415 P.2d 185, 187 (Okla.Crim.App.1966) ("[T]he verdict must be certain, positive, and free from all ambiguity.").

(22) Thus, in *State v. Wardlow*, 95 N.M. 585, 624 P.2d 527 (1981), our Supreme Court affirmed the trial judge in rejecting the jury's verdict even though the foreman had stated that "the jury voted 12–0 no to the charge, not guilty." The foreman's explanation of the jury's action indicated that the jury had never actually voted with respect to guilt or innocence but had merely expressed the view that the charge was "inappropriate." *Id.* at 586–87, 624 P.2d at 528–29.

(23) To the extent that Defendant contends that Rule 5–611(E) forbids a judge from rejecting a verdict once the jury announces its unanimity, we disagree. It would be remarkable if Rule 5–611(E) had been intended to overturn a deeply rooted tradition of judicial supervision of verdicts. We do not read the rule as stating that further deliberations can be required only if the jury announces that it is not unanimous.

(24) In reaching this conclusion, we are supported by the view of the federal courts. Federal Rule of Criminal Procedure 31(d) states:

> **Poll of Jury.** When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

This rule is identical to our Rule 5–611(E) except for the addition of the words "or may be discharged" at the end of the second sentence. Federal courts have held that their rule does not provide the exclusive ground for a trial judge to direct further deliberations by the jury. In *United States v. Rastelli*, 870 F.2d 822, 835 (2d Cir.1989), the Court wrote:

> [A] district judge has authority to require redeliberation in cases in which there is uncertainty, contingency, or ambiguity regarding the jury's verdict.... [R]ule 31(d) does not delimit the only circumstance in which a trial judge may require redeliberation. The rule focuses on the need for unanimity, but it does not address the equally important needs for clarity and certainty as to the meaning of the verdict being reported. Absent clear language requiring it, rule 31(d) should not be read to preclude a district court from taking immediate corrective action where, as here, the jury's verdict is patently uncertain.

*Accord United States v. Hiland*, 909 F.2d 1114, 1137 (8th Cir.1990). In *Rastelli* the foreman had reported that one of the defendants had been found not guilty on each count through count 19. But then in response to the trial judge's inquiry about the jury's answers to some special interrogatories, the foreman stated: " 'There is something wrong with my interpretation of one whole—.' " 870 F.2d at 834. The judge then promptly directed the jury to retire to reconsider its verdicts. When it returned, the jury found the defendant guilty on all but seven of the first 19 counts. The guilty verdicts were affirmed on appeal.

(25) Of course, the trial judge is not empowered to refuse arbitrarily to accept a jury verdict. *See Bigelow v. Superior Court*, 208 Cal.App.3d 1127, 256 Cal.Rptr. 528, 533 (Ct.App.1989). Nor may the court coerce a jury to reach a verdict. *See id.* But the action by the trial judge here was neither arbitrary nor coercive.

(26) Finally, we address Defendant's contention that the questioning of the foreman after the bench conference violated Rule of Evidence 11–606(B). The rule states:

**Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

By its terms the rule does not apply to the present situation. The judge was not entering into "an inquiry into the validity of a verdict." The inquiry regarded whether the judge should enter a verdict in the first instance. The issue was the vote of each juror at the time that the judge was making her inquiry, not "any matter or statement occurring during the course of the jury's deliberations." We agree with *United States v. Love,* 597 F.2d 81, 85 (6th Cir.1979) that "there is a difference between impeaching a valid verdict and correcting an announced verdict which does not reflect the true action of the jury." There was no impeachment of the verdict here.

(27) We therefore hold that the trial judge's actions were appropriate and Defendant was not acquitted of the CSP charge. The State may proceed to prosecute Defendant on that charge.

## IV. CONCLUSION

(28) We affirm the district court order granting a new trial.

(29) **IT IS SO ORDERED.**

BOSSON and ARMIJO, JJ., concur.