13 P.3d 468

2000-NMCA-098

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Michael ASTORGA, Defendant–Appellant.**

**No. 21,414.**

Court of Appeals of New Mexico.

Sept. 28, 2000.

Certiorari Denied, No. 26,622, Nov. 9, 2000.

Patricia A. Madrid, Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Samantha J. Fenrow, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

BOSSON, Judge.

{1} Defendant appeals from a district court order denying his motion to dismiss on double jeopardy grounds. *See State v. Apodaca*, 1997–NMCA–051, ¶ 17, 123 N.M. 372, 940 P.2d 478 (holding that such orders are immediately appealable). We issued a calendar notice proposing to affirm. Defendant has responded with a memorandum in opposition. We affirm.

{2} Defendant continues to argue that the district court should have dismissed the criminal information charging him with assault by prisoner and conspiracy. Defendant argues that the criminal information violated his rights to be free from double jeopardy because, as a prison inmate, he had previously been subjected to disciplinary action, including the forfeiture of good time credit, as a result of this same incident. Defendant refers us to *State v. Nunez*, 2000–NMSC–013, ¶ 36, 129 N.M. 63, 2 P.3d 264, and *State ex rel. Schwartz v. Kennedy*, 120 N.M. 619, 626, 904 P.2d 1044, 1051 (1995), which set out a three part test for deciding the issue. Our calendar notice proposed to affirm, observing that it is well settled that good time credit is an administrative scheme that does not implicate double jeopardy protections. *See Enright v. State*, 104 N.M. 672, 673, 726 P.2d 349, 350 (1986); *State v. Millican*, 84 N.M. 256, 501 P.2d 1076 (Ct.App.1972); *Washington v. Rodriguez*, 82 N.M. 428, 430, 483 P.2d 309, 311 (Ct.App.1971).

{3} In his memorandum in opposition, Defendant argues that *Nunez* and *Kennedy* have implicitly overruled our case law because the forfeiture of good time credit constitutes punitive, as opposed to remedial, action. We are unpersuaded that our Supreme Court intended to overrule its existing case law on this issue, and we believe that we should not expand *Nunez* in the face of such preexisting authority. *See State v. Wilson*, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994) (holding that Supreme Court precedent controls, but encouraging the expression of any reservations this Court might harbor). This is particularly true in light of this Court's own case law characterizing the forfeiture of good time credit as a rehabilitative, remedial measure. In *Washington*, 82 N.M. at 430, 483 P.2d at 311, this Court rejected a similar claim after noting with approval *People v. Eggleston*, 255 Cal.App.2d 337, 63 Cal.Rptr. 104, 106 (1967), a case that relied on the United States Supreme Court's definition of remedial to include the revocation of a privilege voluntarily granted. Accordingly, although we agree with Defendant that *Nunez* and *Schwartz* have clarified our double jeopardy analysis, we hold that our preexisting case law is still controlling and the forfeiture of good time credit does not implicate double jeopardy protections.

{4} Defendant's argument that *Nunez* controls relies primarily on the discussion of deterrence in that opinion as a characteristic of a punitive, rather than remedial, statutory scheme. *See Nunez*, 2000–NMSC–013, ¶¶ 85–86, 129 N.M. 63, 2 P.3d 264. Defendant views the forfeiture of good time credit in the setting of prison discipline solely as a deterrent designed to punish, to set an example to the other inmates, and thereby to maintain order. However, the punitive/remedial analysis in *Nunez* is far more complex than just the question of deterrence. *See id.* ¶¶ 61–94. An administrative sanction may have incidental deterrent attributes while being primarily a remedial measure.

{5} Defendant's argument overlooks this complexity. For example, Defendant's argument overlooks the importance our Supreme Court placed on the protection of property rights which were the subject of the punitive forfeiture actions in *Nunez*, and which are not present here. *See id.* ¶¶ 75, 93. Defendant also overlooks the extensive discussion in *Nunez* about a correlation between the sanction imposed and the harm to be remedied and when there is a correlation, the sanction is more likely remedial in nature. *See id.* ¶¶ 87–90. Defendant also ignores the discussion in *Nunez* about the remedial goal of

removing an offender from society for the protection of all, as opposed to punishment of the individual. *See id.* ¶ 68.

 {6} In our view, all of these areas of inquiry from *Nunez* mitigate against Defendant in this case because they reveal attributes of the sanction that predominate over incidental deterrence. Prisons are special places with self-evident management problems in maintaining order. Sanctions such as administrative segregation and the loss of good time credit have the remedial purpose of "removing harm from society," and "social betterment and not individual punishment," that speak more to the administrative challenge of effective prison management and less to the goal of individual punishment. *Id.* ¶ 68. Moreover, according to *Nunez*, "[i]f it is clear that the sanction greatly exceeds the quantum of harm, then it is punitive." *Id.* ¶ 89. Here, the administrative sanction of loss of good time credit seems to correlate evenly with the particular infraction, more like a temporary loss of privileges than a goal of deterrence by punishment. If anything, it is clear that the sanction does *not* "greatly exceed the quantum of harm." Indeed, the harm to society from criminal violations, even within a prison system, may not be adequately addressed by the expedited and remedial prison disciplinary process. Thus, when circumstances justify it, the state may need to address punishment specifically in a separate criminal proceeding, like the one under consideration here, regardless of what remedial sanctions prison management may or may not have imposed for its own ends.

{7} Given these significant differences from *Nunez*, we are confident our Supreme Court would conclude, as we do, that *Nunez* does not pertain, and that the administrative sanction of loss of good time credit does not implicate double jeopardy protections under our state constitution. We note in passing that the federal circuit of which New Mexico is a part has long held that criminal judicial proceedings following administrative punishments imposed by prison officials do not violate the double jeopardy clause. *See United States v. Rising,* 867 F.2d 1255, 1259 (10th Cir.1989) (citing *United States v.*

*Boomer,* 571 F.2d 543 (10th Cir.1978); *United States v. Acosta,* 495 F.2d 60 (10th Cir. 1974); *United States v. Hedges,* 458 F.2d 188 (10th Cir.1972); *Hutchison v. United States,* 450 F.2d 930 (10th Cir.1971)).

## CONCLUSION

{8} For the reasons set forth above, we hold that the administrative sanctions imposed against Defendant in this matter, including the loss of good time credit, do not implicate double jeopardy protections under the state constitution, and therefore those sanctions do not bar the subsequent prosecution of Defendant for crimes arising out of that incident. We affirm the judgment of the district court.

{9} **IT IS SO ORDERED.**

PICKARD, C.J., and BUSTAMANTE, J., concur.