2003-NMCA-065

68 P.3d 182

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**AUGUSTIN M., Child–Appellant.**

**State of New Mexico, Plaintiff–Appellee,**

v.

**Vicki Lynn Flenniken, Defendant–Appellant.**

**State of New Mexico, Plaintiff–Appellant,**

v.

**Richard Lawrence Chavez a/k/a Rus Ritchie Sclassie, Defendant–Appellee.**

**Nos. 22,900, 22,715, 22,768.**

Court of Appeals of New Mexico.

March 5, 2003.

Certiorari Denied, No. 27,997 April 17, 2003.

Certiorari Granted, Nos. 27,996, 27,995, April 21, 2003.

638

Patricia A. Madrid, Attorney General, Katherine Zinn (Docket No. 22,900), Patricia Gandert (Docket No. 22,715), Assistant Attorneys General, Santa Fe, NM, M. Anne Kelly (Docket No. 22,768), Assistant Attorney General, Albuquerque, NM, for State of New Mexico.

David Henderson, Santa Fe, NM, for Appellant in Docket No. 22,900.

John B. Bigelow, Chief Public Defender, Karl Erich Martell, Assistant Appellate Defender, Santa Fe, NM, for Appellant in Docket No. 22,715.

John B. Bigelow, Chief Public Defender, Josephine H. Ford, Assistant Appellate Defender, Albuquerque, NM, for Appellee in Docket No. 22,768.

## OPINION

SUTIN, Judge.

{1} Three cases on appeal present the issue whether failure to instruct a grand

jury on a target's probable trial defenses requires dismissal of the indictment. We consolidate the three appeals and hold that the rule requiring instruction to the grand jury on the essential elements of the crimes does not apply to defenses.

{2} In *State v. Augustin M.*, Docket No. 22,900, Augustin M. (Child) appeals from the district court's denial of his pretrial motion to quash an indictment charging Child with willfully discharging a firearm at a motor vehicle with reckless disregard for another person. The indictment followed a petition and notice of intent to seek disposition as a youthful offender. Child asserts that the State failed to instruct the grand jury on his affirmative defenses of self-defense, defense of another, and defense of property, which, Child contends, are defenses that can negate probable cause. He bases this assertion on the theory that the offense contains an unlawfulness element that the grand jury was required to consider. An important issue in this appeal is whether Child has an immediate right to appellate review.

{3} In *State v. Flenniken*, Docket No. 22,715, Defendant Vicki Lynn Flenniken through interlocutory appeal attacks the denial of her motion to dismiss a grand jury indictment charging her with vehicular homicide. She contends that proximate cause was the crucial issue in the case and an essential element of vehicular homicide. She asserts error on the ground that the prosecutor did not instruct the grand jury on proximate cause.

{4} In *State v. Chavez*, Docket No. 22,768, the State appeals from the district court's grant of Defendant Richard Chavez's motion to dismiss an indictment charging him with unlawful possession of marijuana. The ground for dismissal was that the prosecutor failed to instruct the grand jury on a defense Defendant would raise at trial, namely, that Defendant had a constitutional right to use marijuana as a matter of religious freedom protected under the New Mexico Constitution.

{5} We hold in *Augustin M.* that Child does not have an immediate right to appeal and we therefore dismiss the appeal. However, because we have jurisdiction of and decide *Flenniken* and *Chavez*, and because, on the issue we decide today, *Augustin M.* is an excellent case factually through which to present the issue and, in addition, is more fully and carefully briefed on the issue than is *Chavez*, we develop our holdings in *Flenniken* and *Chavez* through discussion of the facts and issue in *Augustin M.* We specifically note that, while we are using the facts and issue in *Augustin M.* to develop our rulings in *Flenniken* and *Chavez* on the shared issue, we do not dispose of *Augustin M.* on the merits, lacking jurisdiction to do so in the posture of the appeal presently before us. We affirm *Flenniken.* We reverse *Chavez.*

## *AUGUSTIN M.* DISCUSSION

### Background

{6} We set out the facts in *Augustin M.* as Child sets them out in summary form from the testimony of law enforcement officers who testified before the grand jury. The State does not contradict the facts. The facts are important to show what was presented to the grand jury.

{7} Child was seventeen years old and shepherding his family's flock to summer pasture in the Tierra Amarilla, New Mexico area. On the night in question, the flock was pastured on Forest Service land, and camp was located on a spur road off a main Forest Service road. Child was in charge of the camp. It was high school graduation night. Child was with the flock. Late at night a vehicle came from the main road and began to drive through the flock. Child yelled at the occupants of the vehicle to leave. As the vehicle was leaving, it stopped, and Child heard small-caliber gunshots fired from the vehicle. The vehicle was driven a bit further when Child heard large-caliber gunfire. Child was afraid the vehicle would return.

{8} About an hour later, a vehicle again drove to where the spur road branches off the main road. The vehicle stopped and its lights were turned off. The vehicle then turned around, the lights were turned on, and the vehicle proceeded slowly toward the camp, with the horn honking. Child thought the first vehicle or its occupants had returned, and he got his rifle and fired three shots at the motor of the vehicle. He did not

fire at the occupants. His purpose was to protect himself, others in the camp, and the herd of sheep that constituted his family's livelihood. No occupant of the vehicle was seriously injured.

{9} For the purpose of demonstrating probable cause pursuant to NMSA 1978, § 32A–2–20(A) (1996), the State sought and obtained an indictment against Child, charging him with a violation of NMSA 1978, § 30–3–8(B) (1993), which reads in pertinent part: "Shooting at or from a motor vehicle consists of willfully discharging a firearm at or from a motor vehicle with reckless disregard for the person of another."

{10} Before the grand jury hearing, Child's attorney sent a letter to the prosecuting attorney requesting that the jury be given instructions on self-defense, defense of another, and defense of property should the evidence raise those issues. We refer to these three defenses as "the defenses," and we also refer to all three simply as "self-defense." The State instructed the grand jury on the elements of Section 30–3–8(B) and also instructed the grand jury on the definition of "recklessness," but did not instruct the grand jury on any of the defenses as requested by Child.

{11} Child moved to quash the indictment, arguing that the evidence supported the defenses. More specifically, Child argued that under *State v. Parish*, 118 N.M. 39, 43–44, 878 P.2d 988, 992–93 (1994) and related cases, in proving the elements of Section 30–3–8(B), the State had the burden to prove lack of justification, requiring the defenses to be placed before the grand jury along with the elements instruction pursuant to *State v. Ulibarri*, 1999–NMCA–142, 128 N.M. 546, 994 P.2d 1164, *aff'd*, 2000–NMSC–007, 128 N.M. 686, 997 P.2d 818. The district court denied Child's motion to quash, concluding that the State was not required under the "grand jury statutes, NMSA 1978, §§ 31–6–1 [to –15 (1969, as amended through 2001)], . . . to instruct the grand jury on the defenses."

## Preliminary Issue: Unlawfulness and Willfulness

{12} At the outset, we note that Section 30–3–8(B) does not contain the words "un-

lawful" or "unlawfully." Some offenses do contain those words. *See, e.g.*, NMSA 1978, § 30–3–2(A) (1963) (stating "[a]ggravated assault consists of . . . unlawfully assaulting"); § 30–3–4 (1963) (stating "[b]attery is the unlawful, intentional touching"). When "unlawfulness" of an act such as aggravated assault or battery is at issue, unlawfulness must be added as an element in the jury instructions. *See* UJIs 14–132 NMRA 2003; 14–5181 to – 5184 NMRA 2003; *State v. Johnson*, 1996–NMSC–075, ¶ 19, 122 N.M. 696, 930 P.2d 1148 (involving prosecution for aggravated assault with a deadly weapon, an offense containing the element of unlawfulness in its definition, and recognizing the State has the burden of proving unlawfulness at trial when the defendant challenges the element of unlawfulness by producing evidence of justification (making a lawful citizen's arrest) for the assault).

{13} Section 30–3–8(B) contains the word "willfully." The uniform jury instruction for this offense requires neither an unlawfulness instruction, nor a definition of "willfully." *See* UJI 14–342 NMRA 2003. We have defined "willfully" in one context to denote "the doing of an act without just cause or lawful excuse." *State v. Masters*, 99 N.M. 58, 60, 653 P.2d 889, 891 (Ct.App.1982); *see also State v. Rosaire*, 1997–NMSC–034, ¶ 7, 123 N.M. 701, 945 P.2d 66 ("A 'willful' failure to return constitutes a failure to return that is without justification or excuse.").

{14} Child asserts in a footnote that, because "willful" conduct is the "doing of an act without just cause or lawful excuse," therefore, "just as the element 'unlawful' requires the State to disprove justification or excuse when placed at issue in other statutes, the element 'willful' required the same." *See Parish*, 118 N.M. at 42, 878 P.2d at 991 (requiring the State to prove beyond a reasonable doubt that the defendant did not act in self-defense in prosecution for voluntary manslaughter, an offense containing the element of unlawfulness in its definition, and stating that "unlawfulness is an essential aspect of any crime," and that unlawfulness "is not an element which must be proven unless

a defense which justifies the homicide is raised").

{15} The State does not take a position as to whether, if the evidence in the present case were sufficient to require instructions on self-defense at trial, the State would have the burden at trial to prove, as an element of Section 30-3-8(B), that Child's conduct was not justified, i.e., that Child did not act in self-defense. Neither party presented this as an issue on appeal. Thus, as this case is presented on appeal, the parties appear to have assumed that the evidence before the grand jury was sufficient, if presented at trial, to require instructions on the defenses at trial. *See State v. Martinez*, 95 N.M. 421, 423, 622 P.2d 1041, 1043 (1981) (stating that "[t]o warrant an instruction on self-defense the evidence must be sufficient to raise a reasonable doubt in the minds of the jury as to whether or not a defendant ... did act in self-defense"). The parties further appear also to have assumed that the raising of the defenses at trial would place the burden on the State to prove, as an element of the offense, that Child did not act in self-defense. We, therefore, indulge the same assumptions for the purpose of our discussions regarding this case. This brings us quickly to the critical issue.

## The Issue Whether the State Was Required to Instruct on the Defenses

■ {16} Given that the State is required to instruct the grand jury on the elements of the offense the jury is considering, *see Ulibarri*, 1999–NMCA–142, ¶ 9, 128 N.M. 546, 994 P.2d 1164, when the evidence before the grand jury presents a colorable justification for commission of the offense, such as self-defense, is the State required to instruct the grand jury on such a defense? More particularly, must the State instruct the grand jury that, in order to indict, there must exist probable cause that Child did not act in self-defense, or, stated another way, that the jury cannot find probable cause if Child acted in self-defense, as set out in accompanying instructions?

{17} Child pieces together aspects of *Parish* and *Ulibarri* to construct his argument: Under *Parish*, where evidence of self-defense exists, the State has the burden, at trial, to prove beyond a reasonable doubt that the defendant did not act in self-defense. The State has this burden because it must prove that the defendant's acts were unlawful, with unlawfulness being an essential element of the offense. Under *Ulibarri*, the State must instruct the grand jury on all essential elements of the offense. Therefore, Child contends, the State must instruct the grand jury on unlawfulness which, in turn, when evidence of self-defense exists, requires an instruction on self-defense.

{18} The logic of Child's linkage of *Ulibarri* and *Parish* to a self-defense instruction requirement in grand jury proceedings, at first blush, seems acceptable. But it is not, for it makes an unacceptable leap from criminal trial, where the State must prove guilt beyond a reasonable doubt, to grand jury proceedings, where the State is merely required to present evidence sufficient for the grand jury to find probable cause that the crime has been committed. *See* § 31–6–10 (requiring for indictment that the grand jury "be satisfied from the lawful evidence before it that an offense against the laws has been committed and that there is probable cause to accuse by indictment the person named, of the commission of the offense so that he may be brought to trial therefor").

{19} Nothing in *Ulibarri, Johnson,* or *Parish* requires the instruction Child demands. *Ulibarri* focused on the point that the elements of the offense presented to the grand jury *be of record.* It contains no discussion of whether the State must instruct the grand jury on probable defenses the target may raise at trial. *Johnson* and *Parish* pertain only to burden of proof and instructions in criminal trials, where the State is required to prove unlawfulness beyond a reasonable doubt when the defendant introduces evidence of self-defense. Further, Child has failed to provide any authority for his position, beyond his attempt to extend the Supreme Court's analysis in *Parish* to grand jury proceedings. We see no basis on which to require the State to instruct the grand jury on defenses a defendant may raise in a criminal trial to acquit based on justification, and we understand the history

and jurisprudence of grand juries to suggest that instruction on defenses should not be given.

{20} The grand jury existed in England for hundreds of years and was established constitutionally in New Mexico by Article 2, Section 14 of our Constitution. *Buzbee v. Donnelly*, 96 N.M. 692, 695, 634 P.2d 1244, 1247 (1981). The grand jury is to inquire whether there is " 'sufficient cause to call upon the party to answer [the accusation].' " *Id.* (quoting IV W. Blackstone, *Commentaries on the Laws of England*, 300 (1769)). The "power [of the grand jury] is only to accuse, not to convict." *Id.* at 696, 634 P.2d at 1248 (quoting *Cassell v. Texas*, 339 U.S. 282, 302, 70 S.Ct. 629, 94 L.Ed. 839 (1950) (Jackson, J., dissenting)) (internal quotation marks omitted).

> Its duty is to indict if the prosecution's evidence, unexplained, uncontradicted and unsupplemented, would warrant a conviction. If so, its indictment merely puts the accused to trial. The difference between the function of the trial jury and the function of the grand jury is all the difference between deciding a case and merely deciding that a case should be tried.

*Id.*

{21} Courts generally are reluctant to upset indictments based on allegations of prosecutorial misconduct in grand jury proceedings. *See id.* at 696–97, 634 P.2d at 1248–49. Except in clear and flagrant cases of such abuse, to do so would itself lead to abuse of the grand jury. *See id.* at 701, 634 P.2d at 1253. Additionally, courts generally refuse to upset indictments based on a prosecutor's use of, or failure to use, evidence in a grand jury proceeding. *See id.* at 697, 634 P.2d at 1249. Otherwise, for example, a defendant could insist on a hearing to adjudicate the competency or adequacy of evidence. *See id.* " 'Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws.' " *Id.* at 702, 634 P.2d at 1254 (quoting *United States v. Dionisio*, 410 U.S. 1, 17, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973)). "Courts do not want exclusionary rules, sup-

pression hearings, evidentiary rules or mini-trials to disrupt or delay the grand jury's function." *Id.*

{22} Our Legislature has departed somewhat from the broad discretion given prosecutors under common law grand jury doctrine by requiring the State to "present evidence that directly negates the guilt of the target where [the prosecutor] is aware of such evidence." § 31–6–11(B); *Buzbee*, 96 N.M. at 698, 634 P.2d at 1250. "Direct evidence is evidence which, if believed, proves the existence of the fact without inference or presumption." *Id.* at 700, 634 P.2d at 1252. It "is actual knowledge gained through a witness'[s] senses." *Id.; see also* UJI 14–5001 NMRA 2003 (instruction on direct and circumstantial evidence).

{23} In the present case, the State actually presented evidence which, if Child's defenses were considered, might lead a trial jury to negate Child's guilt. Child's position is that because the evidence that could negate his guilt was known to the prosecutor and submitted to the grand jury, the State was required under *Parish* and *Ulibarri* to instruct the jury on the defenses.

{24} Child's request that the prosecutor instruct on the defenses is necessarily based on a premise that the prosecutor must present evidence to the grand jury supporting the defenses. This is a faulty premise. A prosecutor has no duty to present *circumstantial* evidence on which a target might defend against a charge. *See Buzbee*, 96 N.M. at 701, 634 P.2d at 1253; *State v. Lara*, 110 N.M. 507, 516, 797 P.2d 296, 305 (Ct.App. 1990) (stating that the State is only required to present direct exculpatory evidence that directly negates a defendant's guilt); *State v. Juarez*, 109 N.M. 764, 766–67, 790 P.2d 1045, 1047–48 (Ct.App.1990). Even if a defendant testifies or makes statements that directly prove self-defense, an aspect of this justification is inherently circumstantial. The proving of justification requires inferences to be drawn from the evidence so that the jury may make determinations as to the extent of a defendant's fear, the perceived danger, and the reasonableness of the defendant's conduct. *Lara*, 110 N.M. at 516, 797 P.2d at

305; *Juarez,* 109 N.M. at 767, 790 P.2d at 1048; *see* UJIs 14–5180 NMRA 2003 (defense of property); 14–5183 (self-defense; deadly force by defendant); 14–5184 (defense of another; deadly force by defendant). This aspect of the evidence of self-defense is not evidence that directly negates guilt. Even evidence that directly negates guilt does not require a special instruction to weigh and consider the impact of the potentially exculpatory evidence in making a probable cause determination. And there is no requirement that potentially exculpatory circumstantial evidence be considered by the grand jury in making a probable cause determination. *See Buzbee,* 96 N.M. at 704–05, 634 P.2d at 1256–57 (the rule requiring a prosecutor to divulge exculpatory evidence before trial does not apply in a grand jury proceeding); *Juarez,* 109 N.M. at 768, 790 P.2d at 1049 ("It is not all exculpatory evidence that must be presented under the statute's requirements.").

{25} Furthermore, what Child requires places the State in an untenable position and one not contemplated by the grand jury process. The State's duty to prove unlawfulness at trial necessarily involves a refutation of Child's claimed defenses. As the State argues, its right to cross-examination, its right to introduce its own rebuttal evidence, and its right to argue the applicability of the defenses would be foreclosed in a grand jury proceeding if instructions on the defenses were required. Also, as the State contends, the issue of commission of a crime, when mixed with justification for the alleged criminal act, involves issues of fact to be considered and weighed in an adversarial forum, including, for example, facts such as the level of a defendant's subjective fear, the immediacy of the perceived danger, and the overall reasonableness of the defendant's actions. In a grand jury proceeding, however, a prosecutor is precluded from engaging in challenge and debate to refute Child's defenses. The prosecutor is bound to impartially assist the jury, *see* § 31–6–7, and "must scrupulously refrain from words or conduct that may influence the decision of the grand jury." *State v. Hill,* 88 N.M. 216, 219, 539 P.2d 236, 239 (Ct.App.1975).

{26} "The grand jury does not hear both sides and does not choose between two adversaries." *McKenzie v. Fifth Judicial Dist. Ct.,* 107 N.M. 778, 779, 765 P.2d 194, 195 (Ct.App.1988); *see also Buzbee,* 96 N.M. at 696, 634 P.2d at 1248 (" 'It does not hear both sides but only the prosecution's evidence, and does not face the problem of a choice between two adversaries.' " (quoting *Cassell,* 339 U.S. at 302, 70 S.Ct. 629)). "The grand jury's duty is to indict if the prosecution's evidence, *unexplained, uncontradicted and unsupported,* would warrant a conviction." *Juarez,* 109 N.M. at 768, 790 P.2d at 1049 (internal quotation marks and citation omitted) (emphasis added). A target of an indictment "does not have a clear legal right to have the grand jury investigation proceed in the same manner as a criminal trial with the full panoply of due process rights." *In re Grand Jury of Sandoval County,* 106 N.M. 764, 768, 750 P.2d 464, 468 (Ct.App. 1988).

{27} In *Buzbee,* our Supreme Court emphasized the distinction between the standard of proof in grand jury and trial jury proceedings: probable cause versus proof beyond a reasonable doubt. 96 N.M. at 704–05, 634 P.2d at 1256–57. The distinction is especially important in the present case, particularly in view of the admonition in *Buzbee* that courts should not review an indictment duly returned and regular on its face absent a claimed statutory or constitutional violation. *See id.* at 706, 634 P.2d at 1258.

### Child's Right to Appeal

{28} The district court authorized an interlocutory appeal of its denial of Child's motion to quash. Child then sought review in this Court pursuant to an "Alternative Application for Interlocutory Appeal or Petition for Writ of Error," filed in Docket No. 22,620, which we denied. Before that denial, Child filed a notice of appeal, which initiated the review Child now seeks in this appeal. The notice of appeal states it was filed "to protect [Child's] rights in the event the Court of Appeals determines that the order was a final order rather than interlocutory in nature." After summary calendar proceedings,

this Court placed the appeal on its general calendar.

{29} Child has anticipated our concern regarding his right to immediate appeal from the district court's denial of his motion to quash the indictment. He contends that if he is not given immediate review of the denial of his right to have the grand jury instructed on his defenses, his right to appeal under Article VI, Section 2 of the New Mexico Constitution will be infringed. Child argues that, once he is tried, the denial of the right to have the grand jury instructed on his defenses will be placed beyond meaningful review. According to Child, "a finding of guilt at trial supercedes a finding of probable cause, and an acquittal renders it moot." Child supports this argument by quoting and emphasizing particular statements in *Ulibarri*:

> The purpose of our ruling is simply to require strict compliance with the statutory and Supreme Court provisions controlling the grand jury process. This is primarily a forward-looking concern. *The difficulty with the grand jury procedure we have disapproved here is real and important, but it is not one that can be expected to carry forward into or past a trial on the merits of the case.* The grand jury only makes a finding of probable cause. A defendant should not be required to face a trial in the absence of probable cause. But at a trial on the merits, the State has the obligation to prove not just probable cause but guilt beyond a reasonable doubt. *Like difficulties with the quality or type of evidence relied upon by the grand jury in returning an indictment, any question of probable cause is necessarily obviated by a finding of guilt.* Thus, any ruling that would call into question any plea arrangement, verdict or other post-hearing resolution of cases would be unwarranted and pernicious.

*Ulibarri*, 2000–NMSC–007, ¶ 2, 128 N.M. 686, 997 P.2d 818 (quoting *Ulibarri*, 1999–NMCA–142, ¶ 23, 128 N.M. 546, 994 P.2d 1164) (internal quotation marks and citations omitted) (emphasis Child's). Child appears to seek review under the collateral order

doctrine through two channels, (1) writ of error, and (2) constitutional right to an immediate appeal.

## A. Writ of Error

{30} Child contends that the denial of his motion to dismiss "might be treated as a collateral order under *Carrillo v. Rostro*, 114 N.M. 607, 845 P.2d 130 (1992) and thus support a writ of error." Since we have already denied Child's application for a writ of error in another, prior proceeding, we treat this contention as a request that we consider this appeal as another application for writ of error. *See id.* at 619, 845 P.2d at 142 (treating notice of appeal as application to invoke writ of error procedure where "procedure to be followed was not even announced until today").

{31} Child points out that the collateral order doctrine has been established in federal law as an exception to the final-order rule in certain instances in which "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989) (internal quotation marks and citation omitted); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981). Child then points out that the federal collateral order doctrine was applied in *Carrillo* to permit discretionary review pursuant to a writ of error. *See id.* at 610, 616–17, 845 P.2d at 133, 139–40.

{32} *Carrillo* was a civil rights action in which defendant school board members raised the defense of qualified immunity. *Id.* at 609, 845 P.2d at 132. Our Supreme Court did, indeed, adopt the federal collateral order doctrine as that doctrine was adopted in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and, it appears, as the doctrine was clarified in later Supreme Court cases. *Carrillo*, 114 N.M. at 613, 845 P.2d at 136. *Carrillo* set out the doctrine as follows:

> The collateral order doctrine is a "narrow exception," whose reach is limited to trial court orders affecting rights that will be irretrievably lost in the absence of an

immediate appeal. To fall within the exception, an order must at a minimum satisfy three conditions: It must "conclusively determine the disputed question," "resolve an important issue completely separate from the merits of the action," and "be effectively unreviewable on appeal from a final judgment.

*Id.* (quoting *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 430–31, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985)). *Carrillo* also quoted Professor Moore's view that "[t]he third leg of the *Cohen* test, the requirement that the decision must be 'effectively unreviewable on appeal from final judgment,' contains the essence of the collateral order doctrine." *Id.* (quoting 9 James W. Moore et al., *Moore's Federal Practice 2d* ¶ 110.10, at 73 (1992) (footnotes omitted)).

{33} The district court in *Carrillo* denied the school board members' request to certify the qualified immunity issue for immediate interlocutory appeal, and the defendants appealed based on a United States Supreme Court decision holding the denial of qualified immunity in a civil rights action to be a final and appealable decision under the collateral order doctrine. *Id.* at 610–12, 845 P.2d at 133–35; *see Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (holding that a denial of qualified immunity on a § 1983 claim is final and appealable under the collateral order doctrine). Our Supreme Court addressed the question whether it had jurisdiction to immediately review the order denying qualified immunity. *Carrillo,* 114 N.M. at 612–13, 845 P.2d at 135–36. This brought into question whether the order was a final decision as contemplated under NMSA 1978, § 39-3-2 (1966), which permits appeals in civil cases from final judgments or decisions and interlocutory orders or decisions which practically dispose of the merits of the action. *Carrillo,* 114 N.M. at 613, 845 P.2d at 136.

{34} In discussing the federal collateral order doctrine, the Court in *Carrillo* stated that the essence of the doctrine is the requirement "that the order sought to be reviewed implicates rights that will be irretrievably lost, absent immediate review and regardless of the outcome of an appeal from the final judgment." *Id.* at 614, 845 P.2d at 137. The Court implemented the collateral order doctrine through the writ of error procedure, *see* N.M. Const. art. VI, § 3 and Rule 12–503 NMRA 2003, ruling this discretionary procedure to be the appropriate means to review the denial of summary judgment for defendant school board members who claimed entitlement to qualified immunity. *Carrillo,* 114 N.M. at 616–17, 845 P.2d at 139–40. In addition, the Court indicated that the implementation of the collateral order doctrine through the use of our interlocutory appeal procedure to seek review under the circumstances in *Carrillo* would be inappropriate. *Id.* at 619, 845 P.2d at 142; *see State v. Apodaca,* 1997–NMCA–051, ¶ 11, 123 N.M. 372, 940 P.2d 478 ("[O]ur Supreme Court has stated that an order satisfying the requirements of the collateral order doctrine is to be reviewed *only* pursuant to an application for a writ of error, which confers discretion on the appellate court to grant or deny review." (emphasis added)).

**B. Constitutional Right to Appeal**

{35} Child also argues that *Carrillo* and *Apodaca* have left the door open for review pursuant to the constitutional Article VI, Section 2 right to appeal through invocation of the collateral order doctrine. Specifically, Child argues that because *Carrillo* was not decided based on the constitutional right to appeal under N.M. Const. art. VI, § 2, it "'remains to be decided whether Article VI, Section 2 provides an absolute right to appeal an order satisfying the [federal] collateral order doctrine.'" *Apodaca,* 1997–NMCA–051, ¶ 13, 123 N.M. 372, 940 P.2d 478 (alteration Child's).

{36} *Apodaca* was a criminal double jeopardy case in which the district court entered an order of acquittal, but stated that the State could retry the defendant. *Id.* ¶¶ 6–7. On appeal, the issue was whether the defendant had a right to immediately appeal the order permitting a new trial. *Id.* ¶ 7. In analyzing the issue, we noted that, in civil cases, "New Mexico law provides the right to appeal a 'final decision,'" and that, in *Carrillo,* our Supreme Court stated that the jurisdictional question before it was whether the

order was a "final decision." *Apodaca,* 1997–NMCA–051, ¶ 11, 123 N.M. 372, 940 P.2d 478. We also noted *Carrillo's* statement that an order satisfying the collateral order doctrine could be reviewed only pursuant to a writ of error and concluded that our Supreme Court did not adopt "the view of the United States Supreme Court that an order satisfying the collateral order doctrine is a 'final decision.'" *Apodaca,* 1997–NMCA–051, ¶ 11, 123 N.M. 372, 940 P.2d 478. We stated: "At most, *Carrillo* would permit us to treat Child's notice of appeal as an application for a writ of error." *Apodaca,* ¶ 11, 123 N.M. 372, 940 P.2d 478. However, because *Carrillo* did not consider Article VI, Section 2, we stated that, at least in a criminal case, "it remains to be decided whether Article VI, Section 2 provides an absolute right to appeal an order satisfying the collateral order doctrine." *Apodaca,* 1997–NMCA–051, ¶ 13, 123 N.M. 372, 940 P.2d 478.

{37} We noted in *Apodaca* that in criminal cases a defendant has a right to appeal only from "the entry of any final judgment," *see* NMSA 1978, § 39–3–3(A)(1) (1972), whereas a civil appellant can appeal from "final judgments or decisions," causing uncertainty as to how our Supreme Court would apply the collateral order doctrine in criminal cases such as *Apodaca. Apodaca,* 1997–NMCA–051, ¶ 12, 123 N.M. 372, 940 P.2d 478. However, we chose not to address application of the collateral order doctrine to permit the *Apodaca* appeal. *Id.* ¶ 13. We chose instead to permit the appeal under Article VI, Section 2, relying for this determination on New Mexico Supreme Court cases permitting an immediate appeal by the State from an order granting a new trial in a criminal case. *See State v. Griffin,* 117 N.M. 745, 750, 877 P.2d 551, 556 (1994) (permitting the State to appeal, but stating "we limit an immediate appeal to an order in which it is claimed the grant of a new trial was based on an erroneous conclusion that prejudicial legal error occurred during the trial or that newly-discovered evidence warrants a new trial"); *State v. Chavez,* 98 N.M. 682, 683, 652 P.2d 232, 233 (1982) (permitting the State to appeal an order granting a new trial).

{38} Although uncertain about the rationale of *Griffin* and *Chavez* in permitting the immediate appeal instead of requiring the State to await the conclusion of the new trial, we determined in *Apodaca* that the *Griffin* and *Chavez* "decisions compel granting a defendant the right to appeal an order denying a motion to dismiss on double jeopardy grounds." *Apodaca,* 1997–NMCA–051, ¶¶ 14–15, 123 N.M. 372, 940 P.2d 478. We also determined that the order denying the motion to dismiss on double jeopardy grounds "could not be remedied once the second trial ha[d] taken place." *Id.* We acknowledged, as Child presently asserts, that "[s]ome interests cannot be adequately protected if an appeal ... must await the entry of judgment," and, in particular, that "a defendant's right not to be subjected to a second trial for the same offense could not be remedied once the second trial has taken place." *Id.* ¶¶ 15–16. We stated that "[a]lthough Article VI, Section 2 speaks of the right to *one* appeal, more than one appeal may be necessary in a single case to serve the purpose of the constitutional provision." *Id.* ¶ 15.

{39} Child additionally argues that Article VI, Section 2 adds a dimension that does not exist in federal collateral order doctrine jurisprudence. According to Child, our State constitutional right to appeal provides greater protection than does federal law when an order meets the requirements of the collateral order doctrine. Child's analysis for these arguments is that it would be anomalous for this Court, as in *Carrillo,* to permit review by writ of error based on the federal collateral order doctrine, when no federal constitutional right to appeal exists, yet to deny an appeal in state court where a constitutional right to appeal exists and when, if no appeal is allowed, the right will be forever lost. Child likens this circumstance to that in which our State Constitution has been applied to provide greater protection to a defendant than the protection afforded under the United States Constitution. *See State v. Gomez,* 1997–NMSC–006, ¶ 22, 122 N.M. 777, 932 P.2d 1.

### C. The Collateral Order Doctrine Does Not Permit or Require Review in This Case

{40} We have discussed *Carrillo* and *Apodaca* at some length. Child argues that the rationales in *Carrillo* for permitting a writ of error and *Apodaca* for permitting an appeal apply in the present case. The underlying rationale advanced by Child is that the right to an express probable cause determination is a right that cannot be vindicated after trial.

{41} We are not persuaded that either *Carrillo* or *Apodaca* should be interpreted or extended to give an accused a right through the collateral order doctrine, or otherwise, to either a writ of error review or an Article VI, Section 2 immediate appeal from an order denying a motion to dismiss an indictment based on a defect in the grand jury proceeding. We recognize that our Supreme Court stated in a footnote in *Carrillo* that the Court "remain[ed] free to apply the doctrine as we deem appropriate in future cases." *Carrillo*, 114 N.M. at 617 n. 9, 845 P.2d at 140 n. 9. We note that the Court, at the same time, stated that, "[b]y adopting the collateral order doctrine as originally formulated by the United States Supreme Court, we do not imply which we necessarily adopt, in advance, all of the rulings made by that Court since *Cohen* concerning those orders that are and those which are not reviewable under the doctrine." *Id.*

{42} In applying the writ of error procedure, the Court in *Carrillo* revived a procedure already on the New Mexico books that had "fallen into almost complete disuse and is now largely a dead letter." *Id.* at 617–18, 845 P.2d at 140–41. This lifesaving act under the circumstances in *Carrillo* does not appear to have lessened the acknowledged historical hostility toward extended application of the collateral order doctrine with resulting expansion of piecemeal appeals in criminal cases. *See id.* at 616, 845 P.2d at 139. Nor does it appear that *Carrillo* intended to signal for future cases a relaxation of *Cohen's* concern about the "unwarranted expansion of the 'small class' of cases in which the doctrine may be appropriately applied." *Id.* Our Supreme Court in fact denied certiorari

sought by the defendant in *Apodaca*, where this Court chose not to invoke the collateral order doctrine in a criminal double jeopardy case, "[d]espite the force of the policies supporting *Abney* [*v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) ]," a case in which the United States Supreme Court held that an order rejecting a defendant's double jeopardy claim was reviewable. *Apodaca*, 1997–NMCA–051, ¶ 11, 123 N.M. 372, 940 P.2d 478.

{43} To date, since *Carrillo*, the collateral order doctrine has been invoked or ruled to be generally invocable only in civil cases involving the right not to be tried based on qualified immunity or on governmental immunity where the contract sued on is not in writing. *See Chavez v. Bd. of County Comm'rs*, 2001–NMCA–065, ¶ 11, 130 N.M. 753, 31 P.3d 1027; *Doe v. Leach*, 1999–NMCA–117, ¶ 12, 128 N.M. 28, 988 P.2d 1252; *Sugg v. Albuquerque Pub. Sch. Dist.*, 1999–NMCA–111, ¶ 8, 128 N.M. 1, 988 P.2d 311; *Cockrell v. Bd. of Regents of N.M. State Univ.*, 1999–NMCA–073, ¶ 2, 127 N.M. 478, 983 P.2d 427; *cf. Handmaker v. Henney*, 1999–NMSC–043, ¶¶ 16, 20, 128 N.M. 328, 992 P.2d 879 (holding that interlocutory determinations concerning sovereign immunity under NMSA 1978, § 37–1–23(A) (1976) granting governmental immunity from actions based on contract to be "generally subject to the collateral order doctrine," but holding the particular denial of summary judgment on the contract issue and immunity to be "not properly before this Court on petition for writ of error").

{44} We decline to apply the collateral order doctrine in the present case. Even were the doctrine applicable in a criminal case, we do not think that the denial of a motion to quash an indictment on the grounds for the dismissal in this case presents a case for such review. Child, under the circumstances in this case, does not have a right not to be tried. There exists a " 'crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges.' " *Midland Asphalt*, 489 U.S. at 801, 109 S.Ct. 1494 (quoting *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 269, 102 S.Ct. 3081, 73 L.Ed.2d

754 (1982)). As explained in *Midland Asphalt*, a right not to be tried, viewed under the narrow exception to the final judgment rule carved out in *Cohen*, 337 U.S. at 546, 69 S.Ct. 1221, and resulting in the federal collateral order doctrine, "rests upon an explicit statutory or constitutional guarantee that trial will not occur—as [in federal law] in the Double Jeopardy Clause." *Midland Asphalt*, 489 U.S. at 801, 109 S.Ct. 1494.

{45} The issue before us arises based on Article II, Section 14 of the New Mexico Constitution, which says that a person cannot "be held to answer for a ... crime unless on a presentment or indictment of a grand jury or information filed by a district attorney or attorney general." N.M. Const. art. II, § 14. However, in the sense of a right not to be tried, the Article II, Section 14 right is satisfied by an indictment, valid on its face, and returned by a legally constituted grand jury. *See Buzbee*, 96 N.M. at 697, 702, 634 P.2d at 1249, 1254 (adopting language from *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956) which, considered by *Buzbee* to be "the law of the land," stated: "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."). Article II, Section 14 does confer a right not to be tried when there is no grand jury indictment. *See Midland Asphalt*, 489 U.S. at 802, 109 S.Ct. 1494 (acknowledging that the Grand Jury Clause of the Fifth Amendment "does indeed confer a right not to be tried (in the pertinent sense) when there is no grand jury indictment"). However, once a duly constituted grand jury embraced with requisite secrecy protections returns an indictment that is valid on its face, there exists no right to be tried in the sense relevant to the underlying rationale for the collateral order doctrine emanating from *Cohen*. *See Midland Asphalt*, 489 U.S. at 801–02, 109 S.Ct. 1494. We find the *Midland Asphalt* approach the proper one for us to follow in the present case: "Only a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried." *Id.* at 802, 109 S.Ct. 1494.

{46} This approach cautiously guards "the policy against piecemeal appeals in criminal cases," so that the policy is not "swallowed by ever-multiplying exceptions." *Hollywood Motor Car*, 458 U.S. at 270, 102 S.Ct. 3081. Moreover, although post-conviction review might not suffice or even be available to correct evidentiary or instructional error in the grand jury proceeding, *see Ulibarri*, 2000–NMSC–007, ¶ 2, 128 N.M. 686, 997 P.2d 818, a defendant has adequate avenues in which to seek relief, if relief is appropriate, for such error. Interlocutory appeal remains an available procedure. In *Ulibarri*, 1999–NMCA–142, 128 N.M. 546, 994 P.2d 1164, we decided *State v. Montoya* on interlocutory appeal.[1] Also, a defendant can seek a writ of prohibition. *See Buzbee*, 96 N.M. at 694, 634 P.2d at 1246 (deciding cases that came to the Court on interlocutory appeals and prerogative writs); *Davis v. Traub*, 90 N.M. 498, 499–500, 565 P.2d 1015, 1016–17 (1977) (addressing, pursuant to writ of prohibition, the propriety of the presence of an unauthorized person in the grand jury room). Furthermore, a defendant has the safeguard of a criminal trial that permits the defendant to require the prosecution to provide exculpatory evidence. *See* Rule 5–501(A)(6) NMRA 2003 and its Committee Commentary; *State v. Brown*, 1998–NMSC–037, ¶ 14, 126 N.M. 338, 969 P.2d 313; *Buzbee*, 96 N.M. at 704–05, 634 P.2d at 1256–57. In a criminal trial, the defendant can prove circumstances of justification, is entitled to have instructions on defenses, and is entitled to argue that the jury cannot convict unless, even in the face of the defense of justification, the jury believes the defendant to be guilty beyond a reasonable doubt.

{47} We hold that Child cannot invoke the collateral order doctrine or obtain immediate review pursuant to issuance of a writ of error

---

1. We take judicial notice of this Court's file in *Montoya*, Docket No. 19,451, that contains an order of this Court entered September 22, 1998, granting Montoya's application for interlocutory appeal.

or pursuant to Article VI, Section 2. Also, we decline to treat Child's appeal as a writ of error. We reiterate, however, that the interlocutory appeal and writ of prohibition procedures remain available avenues for relief in appropriate circumstances. Further, we make it clear that we have not addressed or decided in this holding whether a defendant can obtain a writ of error in a criminal case when that defendant has a statutory or constitutional right not to be tried.

### *FLENNIKEN* DISCUSSION

{48} In addition to other crimes, Defendant was charged by grand jury indictment with vehicular homicide on two theories, driving while intoxicated and reckless driving, after she struck and killed a pedestrian. Evidence presented to the grand jury showed, among other things, that Defendant had a blood alcohol content of .13 to .14 percent and a blood alcohol concentration of .12 percent. The evidence further showed that the victim had a blood alcohol content of .259 percent. A police officer who witnessed the incident from his rearview mirror testified that the victim walked into the path of Defendant's vehicle, after having walked across two traffic lanes. A skid mark indicated Defendant had braked before the impact. The incident occurred at 12:55 a.m. on January 30, 2000.

{49} Homicide by vehicle is defined as "the killing of a human being in the unlawful operation of a motor vehicle." NMSA 1978, § 66-8-101(A) (1991). Any person who commits homicide by vehicle while under the influence of intoxicating liquor, or while driving recklessly in violation of NMSA 1978, § 66-8-113 (1987), is guilty of a third degree felony. § 66-8-101(C). UJI 14-240 NMRA 2003, which sets out the "essential elements" of homicide by vehicle, requires the State to prove beyond a reasonable doubt that Defendant operated a motor vehicle while under the influence of intoxicating liquor or in a reckless manner and *thereby caused the death* of the victim. UJI 14-240.

{50} The prosecutor instructed the grand jury from the grand jury manual, indicating the pages from which he was reading. The prosecutor advised the grand jury that, to return a true bill on homicide by vehicle, the

jury had to find "probable cause" that Defendant operated a vehicle in a certain way and that "[Defendant] thereby caused the death [of] or great bodily harm to the victim." The prosecutor then instructed on the alternative ways of operating a vehicle that were prohibited by law, i.e., driving while intoxicated and reckless driving. The prosecutor explained the definition of driving while intoxicated, using the words of UJI 14-243 NMRA 2003 (defining the "under the influence of intoxicating liquor" element for the purposes of UJI 14-240) and explained to the grand jury the definition of reckless driving, using the words of UJI 14-241 NMRA 2003 (defining the "reckless manner" element for the purposes of UJI 14-240).

{51} Defendant moved to dismiss the indictment on the grounds that the prosecutor was aware that a proximate cause issue existed in the case and that the prosecutor therefore had a duty to further instruct the grand jury using UJI 14-251 NMRA 2003, which defines "proximate cause." The district court denied the motion and certified the issue for interlocutory appeal, which we granted. Defendant's two main points on appeal are: (1) that the prosecutor was aware of a causation issue, and (2) that proximate cause is an essential element of the charge and the grand jury was not instructed on proximate cause.

{52} There is little question that a prosecutor must advise the grand jury on the essential elements of the charges presented. *See Ulibarri*, 1999-NMCA-142, ¶ 9, 128 N.M. 546, 994 P.2d 1164; *see also* UJI 14-8001 NMRA 2003 (containing the explanation of proceedings to be given to the grand jury, including the statement that "[t]he district attorney will advise you of the essential elements of any offense which is to be considered" and pointing out that copies of the statutes and instructions "will be placed in your hands for your further guidance and information"). The open question in this appeal is whether the prosecutor must instruct the grand jury on causation by including, in addition to UJI 14-240's words "thereby caused the death," the definitions of proximate cause in UJI 14-251 and UJI 14-252

NMRA 2003 as essential elements of the crime of vehicular homicide.

{53} Defendant constructs the following argument to support her position: At trial, when it is at issue, the State must prove proximate cause in order for a jury to convict. *See State v. Landgraf,* 1996–NMCA–024, ¶ 31, 121 N.M. 445, 913 P.2d 252 ("An act must be the proximate cause of a death before a conviction for homicide can be returned based on that act."); *see also State v. Sisneros,* 42 N.M. 500, 505, 82 P.2d 274, 277 (1938) (holding that the defendant was not guilty of manslaughter unless the commission of the unlawful act was the proximate cause of the death of the victim). "If causation is in issue, Instruction 14–251, the definition of causation, must be given." UJI 14–240 (Use Note). The definition instruction, UJI 14–251, instructs jurors that:

> In addition to the other elements of the crime of [vehicular homicide] . . . , the state must also prove . . . beyond a reasonable doubt that
>
> 1. The death was a foreseeable result of the defendant's act;
>
> 2. The act of the defendant was a significant cause of the death of [the victim]. The defendant's act was a significant cause of death if it was an act which, in a natural and continuous chain of events, uninterrupted by an outside event, resulted in the death and without which the death would not have occurred.

UJI 14–251 incorporates concepts of both proximate cause and factual causation. *State v. Montoya,* 2003–NMSC–004, ¶ 11, 133 N.M. 84, 61 P.3d 793. The factual causation aspect of the instruction requires "the jury . . . to determine whether the defendant's act played any role whatsoever in the death," and "[i]f it did, then it is a factual, or but for, cause of death." *Id.*

{54} Further, Defendant points out that the UJI 14–251 Use Note recommends that UJI 14–252 be used in conjunction with UJI 14–251 if there is evidence that negligence of the victim may have caused the death. UJI 14–252 reads:

> The State must prove beyond a reasonable doubt that the defendant's act was a significant cause of the death of [the vic-

tim]. Evidence has been presented that the negligence of a person other than the defendant may have contributed to the cause of death. Such contributing negligence does not relieve the defendant of responsibility for an act that significantly contributed to the cause of the death so long as the death was a foreseeable result of the defendant's actions. However, if you find the negligence of a person other than the defendant was the only significant cause of death, then the defendant is not guilty of the offense of [name of offense].

{55} From the authorities and the argument Defendant lays out, Defendant asserts what on the surface appears to be an unattackable syllogism: (1) The prosecutor must instruct the grand jury on the essential elements of a charge; and (2) causation, *including the definitions of proximate cause, i.e., the elements for finding proximate cause,* is an essential element of the charge of vehicular homicide; therefore, (3) the prosecutor was required to instruct the grand jury on causation, including the definitions of proximate cause. Defendant wants this Court to set a precedent requiring grand jury instruction on the specific elements for finding proximate cause, "whenever there is the slightest question of causation evident at the time of the grand jury proceeding." Defendant's logic and goal are material and effective only with respect to a trial on criminal charges, not a grand jury probable cause determination for indictment.

### A Grand Jury Target Is Not Entitled to a Vehicular Homicide Proximate Cause Definitional Instruction

{56} The grand jury was instructed that the State was required to prove that Defendant *caused* the victim's death. Defendant demands more. She asserts that the victim's walk across the street in a highly intoxicated condition was "an unforeseeable intervening act" and that foreseeability was a question "that was ripe when this case went to the grand jury." Therefore, Defendant argues, the prosecutor was required to instruct with UJIs 14–251 and 14–252. We disagree.

{57} To inject a proximate cause definitional instruction into the grand jury proceeding would require the grand jury to engage in a discussion and determination of whether Defendant's "act was a significant cause of death" as defined and discussed in UJIs 14–251 and 14–252. This of course would require the grand jury, in its probable cause determination, to evaluate whether and to what extent Defendant's act was one "which, in a natural and continuous chain of events, uninterrupted by an outside event, resulted in the death and without which the death would not have occurred." UJI 14–251. It would also require the grand jury to evaluate the foreseeability of death including the conduct of the victim, as contemplated in UJI 14–252.

{58} Thus, the evidence that Defendant wants placed before the grand jury requires evaluation of degrees of conduct and causation which, in the balance, might tend to sway the grand jury to determine under a probable cause standard that Defendant's conduct was not a significant cause of the victim's death. However, the evidence Defendant demands requires factual determinations regarding both Defendant's and the victim's conduct. The determinations are reserved for conviction or acquittal by a trial jury after argument of counsel. We do not see the desirability, much less the necessity, of requiring the grand jury to engage in the fine factual distinctions and evaluation of conduct and causation required under UJIs 14–251 and 14–252 when it does not have the benefit of argument as to the significance of the distinctions. Nor do we see any basis on which to require the prosecutor to select and present evidence of the victim's conduct, and to instruct under UJIs 14–251 and 14–252, in order to present the grand jury with a circumstantial case that might exonerate Defendant. Defendant's exculpatory proof requires the grand jury to draw inferences from circumstantial evidence so that it may make determinations, for example, as to Defendant's and the victim's states of intoxication, their perceptions, and the reasonableness of their conduct. Evidence of Defendant's manner of driving does not directly negate guilt. *See State v. Blue,* 1998–NMCA–135, ¶¶ 10–11, 125 N.M. 826,

965 P.2d 945 (holding polygraph evidence not directly exculpatory because it would not prove the existence of a fact without inference). Nor does evidence of the victim's condition and conduct. The prosecutor is duty bound only to "present evidence that directly negates the guilt of the target where [the prosecutor] is aware of such evidence." § 31–6–11(B); *Buzbee,* 96 N.M. at 698, 634 P.2d at 1250.

{59} Our analysis in *Augustin M.* provides the rationale under which we decide *Flenniken.* As in *Augustin M.,* we do not think that the prosecutor is required to present evidence to create an issue for the grand jury on the fine points of proximate cause, provable through circumstantial evidence that would require the State, at trial, to engage in refutation of a defendant's claim of innocence due to the victim's conduct. The issue of commission of a crime, when mixed with the issue of justification for conduct and the effect of the victim's conduct, involves issues of fact to be considered and weighed in an adversarial forum. We do not consider this a process contemplated under our grand jury process. *See Buzbee,* 96 N.M. at 696, 634 P.2d at 1248 (stating that the grand jury "does not hear both sides but only the prosecution's evidence, and does not [make] a choice between two adversaries" (internal quotation marks and citation omitted)); *State v. Juarez,* 109 N.M. 764, 768, 790 P.2d 1045, 1049 (Ct.App.1990) ("The grand jury's duty is to indict if the prosecution's evidence, unexplained, uncontradicted and unsupported, would warrant a conviction." (internal quotation marks and citation omitted)). In our view, the causation element stated in UJI 14–240 is adequate for the grand jury's probable cause determination.

## *CHAVEZ* DISCUSSION

{60} In *Chavez,* Defendant's first indictment on marijuana possession charges was dismissed due to the holding in *Ulibarri,* 1999–NMCA–142, ¶¶ 1, 15, 16, 128 N.M. 546, 994 P.2d 1164, requiring dismissal of indictments obtained without a record having been made of the instructions given verbally to the grand jury. Defendant testified in the first grand jury proceeding. He admitted possession of marijuana, but testified that his use

was based on a Rastafarianism religious belief that marijuana is to be consumed at various times, as a religious sacrament.

{61} Defendant was indicted a second time. The charges were possession of marijuana with intent to distribute in violation of NMSA 1978, § 30–31–22(A)(1) (1990), and possession of drug paraphernalia, in violation of NMSA 1978, § 30–31–25.1(A) (2001). Defendant again testified, along the lines of his prior testimony. He requested the prosecutor to instruct the grand jury on his right under the New Mexico Constitution to use marijuana. The prosecutor declined. Defendant moved to dismiss the indictment. The district court obliged, holding that the prosecutor had the duty to "instruct the grand jury on the Defendant's right to use marijuana as part of his honestly held religious beliefs." The State appeals.

### Preliminary Matter: The Viability of the Religious–Use Defense

{62} Before its order dismissing the indictment, the district court entered an order in which it determined that Defendant would be permitted, at trial, to assert as a defense his State constitutional right to use marijuana in religious worship. Defendant's ground for his motion to dismiss the indictment was that his religious-use defense was an essential element of the crimes charged. After obtaining a concession by the prosecutor that the State has an obligation to present evidence of self-defense to a grand jury, the district court stated that "by analogy, not just a self-defense, but to any other crime to which there is an element of defense, that would go to the jury, that the grand jury must be advised of it just[ ] as the State would in any other crime." The court thereafter entered its order granting Defendant's motion to dismiss, determining that "the prosecutor had a duty to incorporate this defense into the instructions, including the 'elements' instruction, in an analogous fashion to the way self-defense is handled in the jury instruction."

{63} The State asserts that it appeals from the district court's determination that Defendant had a State constitutional religious-use defense that he could raise at trial, as well as from the dismissal of the indictment based on the determination that the prosecutor had a duty to instruct the grand jury on that defense. The State's brief in chief then concentrates primarily and heavily on the merits of the issue whether there exists a State constitutional freedom of religion right to use marijuana, although the only order appealed from is solely that dismissing the indictment. Defendant's answer brief is devoted solely to the merits of whether such a defense exists. He barely mentions dismissal of the indictment. He offers no legal authority or argument on the dismissal issue.

{64} Both parties obviously assume that this Court should, or must, decide whether there is a State constitutional freedom of religion right to use marijuana, before we can decide whether the district court erred in dismissing the indictment. We disagree. As this case stands below, the district court ruled that Defendant would be permitted to assert his defense at trial. The State did not have a right to an immediate appeal from this ruling. See NMSA 1978, § 39–3–3 (1972); cf. Griffin, 117 N.M. at 750, 877 P.2d at 556 (permitting the State to appeal from an order granting a new trial); Chavez, 98 N.M. at 683, 652 P.2d at 233 (same). We assume, for the purposes of the issue before us on appeal, without deciding the issue, that Defendant has the right to assert his defense at trial. It is not necessary that we decide the merits of Defendant's right to assert his defense at trial, and we decline to do so.

### A Grand Jury Target Is Not Entitled to a Religious–Use Defense Instruction

{65} Our analysis in Augustin M. provides the rationale under which we decide Chavez. Under that analysis, the prosecutor in Chavez had no duty to instruct the grand jury on Defendant's religious-use defense. At the very least, the grand jury would have to evaluate circumstantial evidence, including whether Defendant held his religious beliefs honestly and in good faith. See State v. Brashear, 92 N.M. 622, 630, 593 P.2d 63, 71 (Ct.App.1979) (setting out as inquiry into the religious-use defense whether the religious beliefs are held honestly and in good faith); see also Blue, 1998–NMCA–135, ¶¶ 10–11, 125 N.M. 826, 965 P.2d 945 (holding poly-

graph evidence not directly exculpatory because it would not prove the existence of a fact without inference). Further, nothing about the religious-use defense requires any aspect of it to be proven by the State at trial as an element of the crimes charged. It is purely a defense. Thus, the State is not required to prove lack of justification as an element of possession in the sense that the prosecutor must do so under *Parish*, 118 N.M. at 42, 878 P.2d at 991. Even were such an element involved, just as with self-defense the prosecutor is not required to instruct when the evidence supporting the defense is circumstantial evidence, rather than evidence directly negating guilt. Even were there some evidence directly negating guilt, there still exists no requirement that the prosecutor instruct the grand jury on a defense of justification. The prosecutor has the duty only to "present evidence that directly negates the guilt of the target where [the prosecutor] is aware of such evidence" as required under Section 31–6–11(B).

{66} We hold that the prosecutor had no duty to instruct the grand jury on Defendant's religious-use defense.

## CONCLUSION

{67} We dismiss the appeal in *Augustin M.* for absence of a right to an immediate appeal from the denial of Child's motion to quash the grand jury indictment. We affirm the district court's denial in *Flenniken* of Defendant's motion to dismiss the grand jury indictment. We reverse the district court's grant in *Chavez* of Defendant's motion to dismiss the grand jury indictment, and we remand with instructions to the district court to reinstate the indictment.

{68} IT IS SO ORDERED.

WE CONCUR: LYNN PICKARD, Judge, and CELIA FOY CASTILLO, Judge.