# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-002

Filing Date: January 22, 2009

Docket No. 30,977

IN RE GRAND JURY PRESENTATION
CONCERNING JAMES BORT JONES

JAMES BORT JONES,

     Petitioner,

v.

HON. ALBERT S. "PAT" MURDOCH,
District Court Judge,

     Respondent,

and

SECOND JUDICIAL DISTRICT ATTORNEY'S OFFICE,

     Real Party in Interest.


ORIGINAL PROCEEDING

Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu
Marc M. Lowry
Albuquerque, NM

for Petitioner
Gary K. King, Attorney General
Jocelyn M. Torres, Assistant Attorney General
Santa Fe, NM

for Respondent

Kari Brandenburg, District Attorney
Michael P. Fricke, Assistant District Attorney
Albuquerque, NM

for Real Party in Interest


Gary K. King, Attorney General
Santa Fe, NM

for Amicus Curiae
Office of the Attorney General


Trace Rabern
Attorney and Counselor at Law
Santa Fe, NM

Law Offices of Michael L. Stout
Michael L. Stout
Las Cruces, NM

for Amicus Curiae
NM Criminal Defense Lawyers Association

**OPINION**

**SERNA, Justice.**

{1}     In this extraordinary writ proceeding, we are called upon to clarify how the target of a grand jury investigation may alert the grand jury to the existence of exculpatory evidence.  In doing so, we are mindful of the delicate balance we must strike between the constitutionally independent powers of the grand jury, district attorney, and judiciary.  And in striking that balance, our ruling today recognizes that each entity has an equally important role to play in ensuring that the rights of the target are observed without compromising the purpose or integrity of the grand jury investigation.

{2}     As New Mexico's grand jury statutes—including the Legislature's most recent enactment, NMSA 1978, Section 31-6-11(B) (1969, as amended through 2003)—recognize, fundamental to a reliable indictment is a fair presentation of the evidence upon which the State asks the grand jury to indict, and the withholding of potentially exculpatory evidence strikes at the very heart of the grand jury's assessment of probable cause to indict.  While some irregularities in a grand jury proceeding are subject to judicial review after the grand jury returns an indictment, a post-indictment

2

remedy may be inadequate to cure the very real damage that an ill-advised indictment may inflict on a target's reputation even if the indictment is later dismissed or if the accused is innocent. Moreover, prosecutorial interference with the grand jury's fact-finding function also threatens the structural integrity of the grand jury process by undermining the grand jury's ability to accurately and independently assess the government's evidence of probable cause. Unless the grand jury is empowered to consider all lawful, relevant, and competent evidence bearing on the issue of probable cause, the grand jury cannot perform its historical role of determining whether those accused of wrongdoing by the government should suffer the burdens of a criminal prosecution. We therefore take the opportunity presented by this case to ensure that our grand jury system operates in an informed and efficient manner that is consistent with the constitutional and statutory provisions governing grand jury proceedings in New Mexico.

**THE FACTUAL AND PROCEDURAL BACKGROUND OF THIS CASE DEMONSTRATES THE NEED FOR PRE-INDICTMENT PROCEDURES TO ALERT THE GRAND JURY TO THE EXISTENCE OF TARGET-OFFERED EVIDENCE**

**{3}** Petitioner is the target of a grand jury investigation who asked the prosecuting attorney assisting the grand jury to forward a letter from Petitioner to the grand jury. Petitioner sent the letter under the provisions of Section 31-6-11(B), which permits the target or the target's attorney to "alert the grand jury to the existence of evidence that would disprove or reduce an accusation or that would make an indictment unjustified, by notifying the prosecuting attorney who is assisting the grand jury in writing regarding the existence of that evidence." However, a dispute arose between Petitioner and the prosecutor concerning the extent to which the information in the letter was appropriate for consideration by the grand jury under Section 31-6-11(B). Ultimately, Petitioner filed a petition for a writ of mandamus in the district court asking the grand jury judge to require the prosecutor to give the letter to the grand jury for its consideration. After several months passed without action by the judge, Petitioner then petitioned this Court for a writ of mandamus to compel the prosecutor to forward the letter to the grand jury. During the course of the first oral argument before this Court on the petition, Petitioner abandoned his request for mandamus relief against the prosecutor and instead asked this Court to construe his request for relief as a petition for a writ of superintending control to compel the grand jury judge to resolve the dispute between the target and the prosecutor.

**{4}** At the conclusion of the first oral argument before this Court, we issued an order for simultaneous briefing, which directed the parties to explore alternatives for effectuating the Legislature's intent in enacting the 2003 amendments to Section 31-6-11(B). To provide the parties with guidance, our briefing order advised the parties that the Court's request for further briefing was premised on our conclusion that the 2003 amendments to Section 31-6-11(B) were intended to give the grand jury more information about evidence bearing on the issue of probable cause. We also directed the parties to proceed on the premise that any information about evidence that a target wants

3

to bring to the attention of the grand jury must be submitted through the prosecuting attorney and that it is the prosecuting attorney's responsibility to screen the offer of evidence from the target to ensure that it meets the evidentiary requirements of Section 31-6-11. Within those confines, we asked the parties to focus on the extent to which the courts should be involved in reviewing a prosecutor's decision to reject a target's offer of evidence for the grand jury's consideration. Because of the far-reaching implications for grand jury practice in New Mexico, we also asked for simultaneous amicus curiae briefs from the Attorney General of New Mexico and the New Mexico Criminal Defense Lawyers Association (NMCDLA). Before proceeding further, we take this opportunity to express our appreciation to amici curiae for their invaluable assistance during the briefing and argument of this case.

**{5}** For the reasons that follow, we conclude that the integrity of the grand jury system requires a pre-indictment procedure for resolving disputes between the target and prosecuting attorney concerning whether to alert the grand jury to the existence of evidence the target wants the grand jury to consider. But before discussing the particulars of that pre-indictment procedure, we address a series of related arguments raised by the district attorney and attorney general challenging this Court's authority to act under the procedural posture of this case.

**THE EXISTING DISPUTES BETWEEN THE PARTIES PRESENT CONTESTED ISSUES FOR THIS COURT TO RESOLVE**

**{6}** The district attorney argues that there are no contested issues before this Court because during the first oral argument before this Court Petitioner effectively withdrew the letter he sent to the prosecutor under Section 31-6-11(B). The district attorney further argues that there is no dispute before the Court because "the District Attorney has consented to submitting much of Petitioner's evidence to the grand jury . . . [and] Petitioner has not alleged that the District Attorney refused to present any evidence that he has requested to the grand jury." The district attorney, therefore, argues that this Court would, in effect, be rendering an advisory opinion. *See City of Las Cruces v. El Paso Electric Co.*, 1998-NMSC-006, ¶ 18, 124 N.M. 640, 954 P.2d 72 (quashing certification from federal court because question was moot and the Court avoids issuing advisory opinions); *see also Williams v. Sanders*, 80 N.M. 619, 621, 459 P.2d 145, 147 (1969) (Watson, J., dissenting) (noting that a writ of superintending control should not be used for advisory opinions).

**{7}** Although there are instances when this Court may choose to render an advisory opinion, *see City of Las Cruces*, 1998-NMSC-006, ¶ 18 (noting that the Court may choose to address a moot issue if it is likely to recur or raises an issue of substantial public importance), we need not decide whether this case presents an exception to the prohibition against advisory opinions because there is an actual controversy between the parties. Even though the district attorney maintains that Petitioner withdrew his letter during the first oral argument before this Court, the record of the first oral argument

4

reveals that Petitioner's counsel only indicated that he was "happy to redraft the letter in the form of simple questions as to the evidence if there [was] a problem with the tone of the letter." Because counsel conditioned his offer to redraft the letter on whether "there [was] a problem with the tone of the letter", and because this Court never definitively ruled that there was a "problem with the tone of the letter", we disagree with the district attorney's characterization of the statements of Petitioner's counsel as an actual withdrawal of the letter. Nonetheless, during the second oral argument before this Court, Petitioner's counsel indicated that he had redrafted the letter to excise objectionable argumentative language and had forwarded the letter to the district attorney twenty-four hours before the second oral argument before this Court. Despite the fact that Petitioner has now apparently substituted his original letter for a redrafted letter that purportedly contains no argumentative language, it still appears that a dispute exists between the parties regarding whether the grand jury should be alerted to some of the specific evidence offered by Petitioner irrespective of whether notification of that evidence comes through the first letter or the second.

{8}     In particular, although the district attorney claims there is no dispute before the Court because she "has consented to submitting much of Petitioner's evidence to the grand jury", during the first oral argument before this Court the district attorney indicated that she did not subpoena at least one witness offered by Petitioner (a victim of domestic violence in another case purportedly committed by the victim in this case). The district attorney also indicated that she would not be inquiring into allegations of prior instances of domestic violence, drug dealing, and bribery allegedly perpetrated by the victim in this case, although she would subpoena some of the witnesses suggested by Petitioner in this regard. Despite the apparent submission of the redrafted letter, there is no indication that the district attorney has changed her position regarding the propriety of some of the actual evidence that Petitioner wants to bring to the attention of the grand jury. Moreover, the petition before this Court does not ask us to resolve the evidentiary dispute between the parties but instead asks us to clarify whether the district court must resolve the dispute in the first instance and, if so, under what procedures. As such, we conclude that contested issues remain for resolution by this Court.

{9}     Because the petition before this Court only asks us to formulate the procedure by which the grand jury judge may resolve the dispute between the parties, we do not delve into the substantive issue. Thus, our ruling does not purport to pass judgment on the propriety of the evidence Petitioner wants the grand jury to consider. Nor do we express an opinion on the merit of the prosecuting attorney's apparent objection to alerting the grand jury to at least some of the evidence offered by Petitioner. However, as discussed below, before the grand jury judge can definitely resolve any outstanding disputes, both parties will need to clarify their respective positions in accordance with the procedures we outline more fully at the conclusion of this opinion.

**UNDER THE PROCEDURAL POSTURE OF THIS CASE A WRIT OF SUPERINTENDING CONTROL IS AN APPROPRIATE PROCEDURE FOR**

**ADDRESSING PETITIONER'S CLAIMS**

**{10}** The Attorney General raises two related challenges to the propriety of addressing Petitioner's claims through a writ of superintending control. First, the Attorney General claims that this Court lacks the authority to exercise superintending control over the grand jury because it is an independent institution separate and apart from the judiciary. The Attorney General acknowledges that a writ issued by this Court would be directed to the grand jury judge rather than the grand jury itself. However, because the Attorney General maintains that the district court lacks supervisory control over the grand jury for the same reason that this Court does, the Attorney General reasons that this Court cannot attempt to assert control over the grand jury by simply ordering the grand jury judge to assert control over the grand jury. In short, the Attorney General contends that the judiciary (whether this Court or the district court) cannot constitutionally exercise supervisory control over the grand jury.

**{11}** We begin by pointing out that the Attorney General's argument seems to assume that any ruling by this Court would purport to assert control over the grand jury. The assumption is incorrect. To the extent that this Court or the grand jury judge intervenes to resolve the dispute between a target and prosecuting attorney, that resolution would either uphold or overrule the prosecutor's desire to withhold information from the grand jury. But in no circumstance would judicial review of the prosecutor's decision require the grand jury to consider the evidence tendered by the target. Assuming that the target's offer of evidence meets the evidentiary standards set forth by statute, Section 31-6-11(B) only requires that the grand jury be alerted to its existence. We contemplate requiring nothing more.

**{12}** Even if the grand jury judge determines that the grand jury should be alerted to the existence of the evidence, the grand jury remains free to decide not to hear the evidence offered by the target or to hear the evidence and weigh it as it sees fit. To suggest that judicial oversight of the prosecutor's screening function is an improper invasion into the proper independence of the grand jury is to misunderstand the role of the court and conflate the role of the prosecuting attorney as an aide to the grand jury with the role of the grand jury itself. *See United States v. Fisher*, 455 F.2d 1101, 1105 (2d Cir. 1972) ("[T]he grand jury is not meant to be the private tool of a prosecutor."); *State v. Haberski*, 449 A.2d 373, 378 (Me. 1982) ("The grand jury does not function as an arm of the prosecution."); *In re Nat'l Window Glass Workers*, 287 F. 219, 225 (N.D. Ohio 1922) ("The process by which witnesses are compelled to attend a grand jury investigation is the court's process and not the process of the grand jury, nor of the district attorney.").

**{13}** That said, we recognize that any judicial ruling that requires the prosecuting attorney to alert the grand jury to the existence of potentially exculpatory evidence necessarily impacts the grand jury process. But to assert that such a ruling is an improper invasion of the grand jury's independence is a distortion of the relationship between the

6

grand jury and the court that convenes it.  The true relationship between the grand jury and the court is an interdependent one that enjoys long-standing and widely-held recognition among the states:

> A grand jury has no existence aside from the court which calls it into existence and upon which it is attending.  A grand jury does not become, after it is summoned, impaneled, and sworn, an independent planet, as it were, in the judicial system, but still remains an appendage of the court on which it is attending. . . . All indictments or presentments of a grand jury become effective only when presented in court and a record is made of such action.  A grand jury is not, therefore, and cannot become, an independent, self-functioning, uncontrollable agency.  It is and remains a grand jury attending on the court, and does not, after it is organized, become an independent body, functioning at its uncontrolled will, or the will of the district attorney or special assistant. . . . It can therefore never become an immaterial matter to the court what may be done with its process or with its grand jury.  A court would not be justified, even if it were so inclined, to create or call into existence a grand jury, and then go off and leave it.  A supervisory duty, not only exists, but is imposed upon the court, to see that its grand jury and its process are not abused, or used for purposes of oppression and injustice.

*In re Nat'l Window Glass Workers*, 287 F. at 225; *accord Application of Texas Co.*, 27 F. Supp. 847, 850 (E.D. Ill. 1939) ("A grand jury is a party of the court machinery [and] is under control by the court to the extent that it is organized and the legality of its proceedings determined by the court in accord with the statutes."); *Application of Iaconi*, 120 F. Supp. 589, 590 (D. Mass. 1954) ("[A]ny court . . . can exercise over a grand jury sitting in that court supervisory power to prevent the process of that grand jury from being used abusively."); *People v. Sears*, 273 N.E.2d 380, 388 (Ill. 1971) ("The grand jury is an arm of the court and its in camera proceedings constitute a judicial inquiry.") (internal quotation marks and citation omitted); *People v. Ianniello*, 235 N.E.2d 439, 443 (N.Y. 1968) ("Courts have a particular responsibility to prevent unfairness in Grand Jury proceedings, for the Grand Jury is an arm of the court.") (internal quotation marks and citation omitted).

**{14}** Although the Attorney General appears to recognize that the courts have some valid supervisory control over the grand jury, the Attorney General relies on the United States Supreme Court opinion in *United States v. Williams*, 504 U.S. 36 (1992), to support his position that this Court cannot exercise supervisory control under the circumstances of this case.  As an initial matter, it should be noted that *Williams* dealt with the relationship between the federal judiciary and the federal grand jury. Nonetheless, New Mexico case law recognizes that our grand jury structure as it relates to the judiciary is very similar to the federal system.  *See Buzbee v. Donnelly*, 96 N.M. 692, 695-98, 634 P.2d 1244, 1247-50 (1981) (recognizing that New Mexico law "places

7

our grand jury in much the same position as those in the federal system" and noting the importance of federal case law in this area). Therefore, while not directly binding on this Court, the *Williams* opinion does provide useful guidance for assessing the Attorney General's argument.

**{15}**     Although the Supreme Court in *Williams* ultimately concluded that the federal court lacked supervisory control over the grand jury, it is important to note two distinctions. First, *Williams* was addressing a post-indictment decision by a federal judge to quash the indictment because the government failed to disclose to the grand jury what the judge believed was significant exculpatory evidence. As a result, the focus in *Williams* was necessarily on whether the court's decision to quash the indictment improperly invaded on the grand jury's constitutional and common law independence by overturning an indictment that the grand jury had already determined was supported by the evidence it had before it. *See Williams*, 504 U.S. at 53-54 (discussing why it would be contrary to the "common law of the Fifth Amendment grand jury" to quash an indictment based on sufficient evidence because the prosecutor failed to present exculpatory evidence to the grand jury). In contrast, in this case the grand jury has not yet acted, and this Court therefore is not asked to second-guess what the grand jury might have done if it had other exculpatory evidence before it. Instead, we are only asked to decide what procedures should be in place to address instances when the prosecutor does not want to alert the grand jury to the existence of ostensibly exculpatory evidence offered by the target. As such, any procedures this Court puts in place would not interfere with the independence of the grand jury itself but rather would provide a mechanism to resolve disputes between the prosecution and defense since both have been statutorily authorized to submit evidence for the grand jury's consideration. *See* NMSA 1978, § 31-6-7(A) (1969, as amended through 2003) (requiring the district attorney to examine witnesses before the grand jury); § 31-6-11(B) (permitting the target or his attorney to alert the grand jury to exculpatory evidence).

**{16}**     A second distinguishing feature in *Williams* is that the district court was acting in the absence of any preexisting prosecutorial standards set forth in a specific statute or Court rule. *See Williams*, 504 U.S. at 46 (noting that federal courts cannot exercise their supervisory control over the grand jury to prescribe "standards of prosecutorial conduct in the first instance"). If the court had been acting based on an existing statute or court rule, *Williams* implies that there would have been an adequate basis for the court to exercise supervisory control over the grand jury. *Id.* (recognizing that supervisory power over the grand jury "can be used to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions") (internal quotation marks and citation omitted). In light of the fact that this Court is asked to formulate a procedure to implement the target's right to alert the grand jury to potentially exculpatory evidence under Section 31-6-11(B), *Williams* actually supports our conclusion that this Court and, by extension, the grand jury judge have supervisory control over the grand jury

8

proceedings under the circumstances of this case.

**{17}**     In addition to arguing that this Court (and the grand jury judge) lack supervisory control over the grand jury, the Attorney General also argues that Petitioner cannot meet the formal requirements for relief by way of a writ of superintending control. Specifically, the Attorney General maintains that extraordinary relief is inappropriate in this case because Petitioner has several adequate remedies at law.  *See generally State v. Zinn*, 80 N.M. 710, 712, 460 P.2d 240, 242 (1969) (recognizing that the Court exercises its power of superintending control when "there is no plain, speedy, and adequate remedy").  In this regard, the Attorney General suggests that a dissatisfied target could file a motion to dismiss the indictment under Section 31-6-11(A) for prosecutorial bad faith, could seek an interlocutory appeal if the motion to dismiss were denied, or could file a direct appeal at the conclusion of the criminal proceeding if ultimately convicted.

**{18}**     While these options could provide a measure of relief for a prosecutor's wrongful withholding of exculpatory evidence from the grand jury, *see Kerpan v. Sandoval County Dist. Att'y's Office*, 106 N.M. 764, 767, 750 P.2d 464, 467 (Ct. App. 1988) (providing that writ of mandamus to require prosecutor to present evidence to the grand jury would be inappropriate because a later motion to dismiss the indictment would provide an adequate remedy), there are a number of reasons why the alternatives identified by the Attorney General will often be inadequate remedies.  First and foremost, even if a target could successfully pursue the remedies suggested by the Attorney General, they would all be post-indictment remedies and, as such, could not remedy the harm flowing from an unjustified indictment itself.  To suggest otherwise would be:

> an astonishingly callous argument which ignores the obvious. For a wrongful indictment is no laughing matter; often it works a grievous, irreparable injury to the person indicted. The stigma cannot be easily erased. In the public mind, the blot on a man's escutcheon, resulting from such a public accusation of wrongdoing, is seldom wiped out by a subsequent judgment of not guilty. Frequently, the public remembers the accusation, and still suspects guilt, even after an acquittal. Prosecutors have an immense discretion in instituting criminal proceedings which may lastingly besmirch reputations. That discretion is almost completely unfettered.  It should surely not extend so far as to preclude judicial interference with a prosecutor's aim to induce an indictment by offering to a grand jury evidence which is the product of illegal acts of federal officers.

*In re Fried*, 161 F.2d 453, 458-59 (2d Cir. 1947) (footnotes omitted); *accord United States v. Briggs*, 514 F.2d 794, 798-99 (5th Cir. 1975) (noting that "[i]t would be unrealistic to deny that an accusation, even if unfounded, that one has committed a serious felony may impinge upon employment opportunities" and recognizing that "acquittal of a named defendant is not wholly curative of the reputational injury suffered

9

by having been charged and tried"); *Menard v. Mitchell*, 430 F.2d 486, 490-91 (D.C. Cir. 1970) (recognizing that even "the mere fact of an arrest" may result in substantial reputational injury and subject the accused to serious economic losses and lost opportunities for schooling and employment "even if followed by acquittal or complete exoneration of the charges involved").

**{19}**    Aside from the undeniable damage inflicted by the mere issuance of an unjustified indictment, delaying the target's right to seek relief until after the indictment is issued also puts the target at a procedural disadvantage.  In particular, the target will have to meet a higher burden to secure post-indictment relief because a request for post-indictment relief would necessarily challenge the sufficiency of the evidence upon which the grand jury's indictment is based.  As such, the target-turned-defendant must establish bad faith on the part of the prosecutor as a prerequisite to obtaining a dismissal of the indictment.  *See* § 31-6-11(A) ("The sufficiency of the evidence upon which an indictment is returned shall not be subject to review absent a showing of bad faith on the part of the prosecuting attorney assisting the grand jury."); *see also State v. Romero*, 2006-NMCA-2006-NMCA-105, ¶ 9, 140 N.M. 281, 142 P.3d 362 (concluding that a defendant cannot challenge the sufficiency of an indictment on the basis that the grand jury did not consider exculpatory evidence because Section 31-6-11(B) "contains no express or implied authorization for judicial review of the evidence to insure that the grand jury considered evidence that disproves or reduces a charge or that makes an indictment unjustified").

**{20}**    In contrast, the pre-indictment remedy that Petitioner now seeks is not dependent on establishing prosecutorial motive but instead focuses on whether the evidence the target wants before the grand jury meets the appropriate evidentiary standard.  Moreover, pre-indictment review eliminates any potential deference the court must give to an existing grand jury indictment that is otherwise valid on its face.  In short, while Petitioner may have other procedural avenues he can pursue besides his current petition before this Court, we reject the notion that Petitioner currently has any other adequate remedy at law to address the specific harm he is trying to avoid—the taint of an unjustified yet virtually unimpeachable indictment.  *See In re Eastburn*, 121 N.M. 531, 537, 914 P.2d 1028, 1029 (1996) (recognizing that the availability of an appeal in an individual case does not necessarily preclude relief by writ of superintending control if the appeal is inadequate to address the harm).

**THE LEGISLATURE'S ENACTMENT OF SECTION 31-6-11(B) IS A PROPER EXERCISE OF ITS PLENARY POWER TO LEGISLATE**

**{21}**    In addition to questioning this Court's supervisory control over the grand jury, the district attorney and the Attorney General also question the Legislature's ability to enact statutes to control the functions of the grand jury.  The implication is that Section 31-6-11(B) has the potential for exceeding the scope of the Legislature's constitutional authority depending on how this Court interprets it.  Also implicit in this argument is the

10

assumption that the actions of the prosecutor are the actions of the grand jury.

**{22}** To the extent that the district attorney and the Attorney General question the Legislature's authority to pass laws affecting the operations of the grand jury, their argument is undercut by the plenary power of the Legislature. *See State ex rel. Clark v. Johnson*, 120 N.M. 562, 575, 904 P.2d 11, 24 (1995) ("The state legislature, directly representative of the people, has broad plenary powers. If a state constitution is silent on a particular issue, the legislature should be the body of government to address the issue."). The district attorney and the Attorney General suggest, however, that the Legislature's broad power is limited by the fact that the grand jury is an independently created body within the Constitution. *See Buzbee*, 96 N.M. at 695, 634 P.2d at 124 (noting the significance of creating "the grand jury under the Bill of Rights, instead of placing it under the Executive Department or the Judiciary). They also stress that within the constitutional provision recognizing the existence of the grand jury, the Constitution specifically identifies those matters pertaining to the grand jury that the Legislature may control by enacting laws. *See* N.M. Const. art. 2, § 14 (providing that the Legislature may prescribe by law the size of the grand jury, the manner of convening and qualifying grand jurors, and the number of grand juror votes needed to indict). Beyond those specifically enumerated matters, the district attorney and the Attorney General maintain that the Legislature cannot legislate.

**{23}** We disagree with the notion that the Legislature's power to legislate in matters affecting the grand jury is limited in nature. In this regard, we note that Article II, Section 14 does not expressly limit the Legislature's power to legislate to those enumerated items pertaining to the grand jury. *See Varney v. Albuquerque*, 40 N.M. 90, 94, 55 P.2d 40, 43 (1936) (recognizing that "when an act of the Legislature is assailed, the court looks to the state Constitution only to ascertain whether any limitations have been imposed upon such power") (internal quotation marks and citation omitted); *cf. State ex rel. Capitol Addition Bldg. Comm'n v. Connelly*, 39 N.M. 312, 321, 46 P.2d 1097, 1102 (1935) (ruling that "the enumeration of subjects of taxation contained in article 8, § 2, as originally adopted, was merely confirmatory of the Legislature's inherent power to tax, and not a limitation thereon"). Moreover, any attempt to invalidate Section 31-6-11(B) by suggesting that the Legislature improperly invaded the legitimate independence of the grand jury is a mischaracterization of what the statute seeks to accomplish.

**{24}** The heart of this case involves the statutorily-created right of the target to alert the grand jury to exculpatory evidence. The provision at issue does not purport to command the grand jury to accept the target's evidence. Instead, the provision simply identifies the prosecutor as the conduit by which a target may alert the grand jury to pertinent evidence. As such, the provision at issue in this case does not diminish the grand jury's prerogative to weigh the evidence before it as it sees fit in making an independent decision whether to indict. Indeed, the grand jury is not even required to hear the evidence once it is made aware of its existence. But the grand jury cannot

11

choose to ignore what it does not know.

{25} Even though the grand jury has long been considered an independent body whose procedures have developed through the common law well before our state or federal constitutions were adopted, *see generally Buzbee*, 96 N.M. at 695-96, 634 P.2d at 1247-48, we disagree with the notion that the common law independence of the grand jury precludes the Legislature from enacting statutes to improve the grand jury system. We have long recognized that the Legislature may exercise its plenary power to alter the common law. *See Ickes v. Brimhall*, 42 N.M. 412, 415, 79 P.2d 942, 943 (1938) (recognizing that "the common law remains the rule of practice and decision" in New Mexico "except as superceded or abrogated by statute or constitution"). While the procedures set forth in Section 31-6-11(B) may not have been known at common law, we fail to see how the Legislature's attempt to give the grand jury greater access to pertinent evidence somehow diminishes the grand jury's independence. Any suggestion to the contrary misconstrues what the Legislature sought to accomplish by enacting Section 31-6-11(B). That said, the independence of the grand jury is certainly implicated when the prosecutor wrongfully refuses to alert the grand jury to target-offered evidence contemplated by Section 31-6-11(B). To address such situations, this Court must balance a number of competing interests to ensure that Section 31-6-11(B) is interpreted in a manner that effectuates the Legislature's intent, recognizes the state's legitimate prosecutorial function, and preserves the independence of the grand jury.

## IMPLEMENTATION OF A PRE-INDICTMENT MECHANISM FOR RESOLVING DISPUTES ARISING UNDER SECTION 31-6-11(B) WILL EFFECTUATE THE LEGISLATURE'S INTENT AND IS CONSISTENT WITH THIS COURT'S SUPERVISORY CONTROL OVER THE GRAND JURY SYSTEM

{26} Because Section 31-6-11(B) does not expressly provide a mechanism for resolving disputes when the prosecutor declines to present target-offered evidence for the grand jury's consideration, the district attorney and Attorney General both insist that this Court should not read an enforcement mechanism into the statute. *See N.M. Indus. Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105 (recognizing that in determining legislative intent the courts "look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended"); *State v. Maestas*, 2007-NMSC-001, ¶ 15, 140 N.M. 836, 149 P.3d 933 ("We may only add words to a statute where it is necessary to make the statute conform to the legislature's clear intent, or to prevent the statute from being absurd."). However, Petitioner and the NMCDLA point to the totality of the 2003 amendments to the grand jury statutes as evidence that the Legislature wanted to improve the reliability of grand jury decisions and restore the grand jury's protective function. In that light, they argue, it would make no sense to leave a target with no recourse when a prosecutor refuses to notify the grand jury of the existence of pertinent evidence under Section 31-6-11(B). *See GTE S.W., Inc. v. Taxation and*

12

*Revenue Dep't*, 113 N.M. 610, 624, 830 P.2d 162, 176 (Ct. App. 1992) (recognizing that "there is also a presumption that in enacting laws, the legislature does not use surplus language or enact useless laws").

**{27}** While New Mexico has little in the way of legislative history that can shed light on legislative intent, one of the final changes to the bill amending subsection B before it was passed by the Legislature was the addition of the introductory clause to the last sentence of Section 31-6-11(B) that requires the target or the target's attorney to alert the grand jury "[a]t least twenty-four hours before grand jury proceedings begin". *See* House Floor Amendment Number 1 to page 3, line 17 of House Judiciary Committee Substitute for House Bill 109, An Act Relating to Grand Juries, 46th Leg., 1st Sess. (N.M. 2003); *see also Martinez v. Jaramillo*, 86 N.M. 506, 509, 525 P.2d 866, 869 (1974) (describing legislative history to include changes to originally introduced bill during the legislative process leading to its final passage); *accord State ex rel. Helman v. Gallegos*, 117 N.M. 346, 355-56, 871 P.2d 1352, 1361-62 (1994); *State v. Alderete*, 88 N.M. 150, 152, 538 P.2d 422, 424 (Ct. App. 1975). With that change, the Legislature clearly intended to give the prosecutor time to screen the target's tendered evidence before the commencement of the grand jury proceeding. And as noted above, in our briefing order we already acknowledged the screening function the prosecuting attorney must perform to avoid the presentation of inappropriate information to the grand jury.

**{28}** Because the Legislature would certainly foresee that conflicts would inevitably arise because of the prosecutor's screening function, we are also confident that the Legislature intended to provide the parties with a small window of time to identify evidentiary disputes before the commencement of the grand jury proceeding. Moreover, given the Legislature's clear intent to give the grand jury access to more information from the target, we see no basis for concluding that the Legislature intended to give the prosecutor unbridled discretion during the screening process. After all, the target has always been able to bring exculpatory evidence to the attention of the prosecutor, and the prosecutor could always simply ignore it unless it directly negated guilt. Thus, in light of past practice, it would be unreasonable to conclude that the Legislature decided to explicitly give the target the right to alert the grand jury to the existence of exculpatory evidence while nevertheless allowing the prosecutor to reject such offers without a check, particularly since the 2003 amendments to Section 31-6-11(B) also eliminated the prosecutor's duty to present evidence that directly negates guilt. *See State v. Herbstman*, 1999-NMCA-014, ¶ 20, 126 N.M. 683, 974 P.2d 177 (noting that the courts "will reject an interpretation of a statute that makes parts of it mere surplusage or meaningless").

**{29}** By accommodating the need for time to identify evidentiary disputes between the prosecutor and target, the Legislature surely anticipated that the grand jury judge would be called upon to resolve such disputes. That said, involving the grand jury judge in resolving disputes between the target and prosecutor over what the grand jury should be made aware of has the potential for putting a significant strain on the resources that the judiciary must devote to grand jury proceedings. Because of the potential burden on the

13

judiciary flowing from evidentiary disputes arising under the 2003 version of Section 31-6-11(B), we construe the Legislature's silence on the procedures to be used for resolving such disputes as a recognition that this Court is in the best position to formulate the procedural framework for its lower courts to use when resolving these types of pre-indictment disputes. *See Lovelace Med. Ctr. v. Mendez*, 111 N.M. 336, 340-41, 805 P.2d 603, 608-09 (1991) (recognizing the "consistent intention on the part of the legislature and this Court that legislative rules relating to pleading, practice and procedure in the courts, particularly where those rules relate to court management or housekeeping functions, may be modified by a subsequent rule promulgated by the Supreme Court").

**{30}** Given the long-standing recognition that the judiciary has the power and obligation to assist the grand jury in carrying out its functions, *see Davis v. Traub*, 90 N.M. 498, 500, 565 P.2d 1015, 1020 (1977) (recognizing that New Mexico "statutes specify certain procedures and authorize specific persons to aid the grand jury's investigation of criminal activity . . . [and this Court] will not permit anyone to circumvent the letter or the spirit of those laws"), we conclude it is incumbent on this Court to fashion a mechanism to resolve disputes under Section 31-6-11(B). Even the restrictive view of the judiciary's supervisory control over the grand jury articulated by the United States Supreme Court in *Williams* supports our decision to create a mechanism for resolving pre-indictment evidentiary disputes based on our own inherent power of superintending control over the grand jury. *See Williams*, 504 U.S. at 46 (recognizing the power of the Court and Congress to adopt "clear rules which were carefully drafted . . . to ensure the integrity of the grand jury's functions").

**{31}** Before discussing the particular procedures to employ, we pause to acknowledge the relative novelty of the task that confronts us. To date, only a handful of states have opted to provide an explicit pre-indictment mechanism to resolve disputes between the prosecutor and the target regarding evidence that should go before the grand jury. *See, e.g.*, Colo. Rev. Stat. Ann. § 16-5-204(4)(l) (allowing any person to request to testify by approaching the prosecutor or grand jury and giving the court discretion to grant a hearing on denied requests); Me. Rev. Stat. Ann. tit. 15, § 1256 (allowing evidence to be offered to the grand jury by prosecutor and "such other persons as said presiding justice may permit"); N.C. Gen. Stat. § 15A-626(a) (giving judge and district attorney discretion to grant requests to testify before grand jury); N.Y. Crim. Pro. Law § 190.50(6) (giving grand jury discretion to grant requests from target to have witnesses called before the grand jury); Tenn. Code. Ann. § 40-12-104(a) (allowing any person who has knowledge or proof of a crime to testify before the grand jury); *People v. Sears*, 273 N.E.2d 380 (Ill. 1971) (recognizing limited authority of the court to direct witnesses to appear before the grand jury over objection of the prosecutor). Ordinarily, courts only become involved in pre-indictment evidentiary disputes when a witness subpoenaed by the grand jury seeks to have the subpoena quashed. *See* Ronald F. Chase, Annotation, *Power of court to control evidence or witnesses going before grand jury*, 52 A.L.R.3d 1316, § 3 (1973).

**{32}** To the extent that courts have taken on the role of deciding whether evidence

14

should be submitted to the grand jury that the prosecutor does not want submitted, there is some suggestion that such an approach has not been adopted by more states because of the potential for extensive pre-indictment litigation. *See, e.g.*, 4 Wayne R. LaFave, Jerold H. Israel, Nancy J. King, & Orin S. Kerr, *Criminal Procedure* § 15.2(c), at 465-66 (3d ed. 2007). Nonetheless, we are firmly convinced that the pre-indictment procedures we outline here today will improve the reliability of the grand jury system. Moreover, the availability of an enforceable pre-indictment procedure for bringing evidence to the attention of the grand jury will likely reduce the number of post-indictment requests for relief that often prove more cumbersome to resolve and more invasive of the grand jury's legitimate prerogative to indict.

**AN EFFECTIVE PRE-INDICTMENT PROCEDURE MUST BE INITIATED WITH CLARITY AND RESOLVED QUICKLY**

**{33}**     As written, Section 31-6-11(B) simply provides that the target may alert the grand jury to the existence of exculpatory evidence by notifying the prosecutor. Presumably, if the evidence offered by the target meets the standard in the statute, namely, evidence that is "lawful, competent, and relevant" and "that would disprove or reduce an accusation or that would make an indictment unjustified", then the prosecutor would be obligated to alert the grand jury to the evidence. *See* NMSA 1978, § 31-6-7(D) (1969, as amended through 2003) (requiring prosecutor to be fair and impartial at all times during grand jury proceedings); *State v. Cruz*, 99 N.M. 690, 692, 662 P.2d 1357, 1359 (1983) ("In dealing with the grand jury, the prosecutor's duty is to protect both the public's interest and the rights of the accused."). But despite the apparent simplicity of the language in the statute, the statute leaves ample room for disagreement regarding how the target is to notify the prosecutor of exculpatory evidence and how the prosecutor is to proceed when he or she does not want to "alert" the grand jury to the evidence offered by the target.

**{34}**     The letter sent by the target's attorney in this case demonstrates the importance of a clear procedure for notifying the prosecutor. Even Petitioner now concedes that some of what was in the letter, such as legal conclusions and argument about the inferences to draw from the evidence, would not be appropriate for direct forwarding to the grand jury. Since Petitioner appears willing to rely on his redrafted letter if this case is remanded for a hearing before the grand jury judge, we find it unnecessary to explicitly rule on what is or is not appropriate about Petitioner's original letter. However, to avoid disputes regarding what is argument and what is evidence, a letter from a target intended for delivery to the grand jury generally should focus on simply providing the grand jury with a factual and nonargumentative description of the nature of any tangible evidence and the substance of the potential testimony of any suggested witnesses, along with the names and contact information of the necessary witnesses who could provide the exculpatory information.

**{35}**     To give both the prosecutor and the reviewing grand jury judge the necessary information to evaluate why the requested evidence in the nonargumentative grand jury

letter qualifies for submission to the grand jury under Section 31-6-11(B), the communication to the prosecutor which contains the grand jury's letter should also be accompanied by a separate cover letter or memorandum, which will not go to the grand jury, expressing any necessary contextual information, arguments as to the propriety or significance of the requested evidence, the proposed questions as contemplated by NMSA 1978, Section 31-6-4(D) (1969, as amended through 2003), and any other matters that may be helpful to communicate to the prosecutor or judge. Whether the prosecutor uses the questions proposed by the target seems to us a matter that is committed to the discretion of the prosecutor provided that the prosecutor does alert the grand jury to the existence of the evidence and, if the proposed witness is called before the grand jury, elicits the general information contemplated by the target. But if the prosecutor does not want to alert the grand jury to the existence of the witness or does not want to elicit the information from the witness that the target deems worthy of submission to the grand jury, the prosecutor must file a motion with the grand jury judge, with notice to the target, seeking confirmation of the prosecutor's decision not to call the witness or not to inquire into the subject matter proposed by the target.

**{36}** Without notice to the target, there would likely be no way to remedy, pre-indictment, the wrongful withholding of evidence by the prosecutor because the secrecy of grand jury proceedings would prevent the target from definitively knowing before an indictment is issued whether the grand jury was alerted to the existence of the target-offered evidence. *See* § 31-6-4(C) and (D) (precluding presence of target before grand jury other than to testify and limiting presence of target's attorney to time when target is testifying); NMSA 1978, § 31-6-8 (1969, as amended through 1983) (limiting preparation of transcript of grand jury proceedings to case where an indictment is returned). In the motion filed with the grand jury judge, the prosecutor should provide the grand jury judge with the target's letter submitting the proposed evidence, and the prosecutor's motion should state why the prosecutor believes the grand jury should not be alerted to the existence of the target-offered evidence. The grand jury judge can then decide whether to ask for a written response from the target and whether to hold a short hearing to allow the parties to argue the matter. In any event, the grand jury judge should resolve the matter quickly, by written order in the judge's discretion if needed to preserve the record, giving the parties clear direction on how to proceed before the grand jury.

**{37}** Assuming that the grand jury does call a target's proposed witness, we find it imprudent to fashion a pre-indictment mechanism to ensure that the prosecutor questions the witness in the manner proposed by the target or otherwise elicits the evidence in the way that the target intended. To begin with, the grand jury very well might decline to hear the target-offered evidence upon learning of its existence. And even if the grand jury does ask the prosecutor to call the target-offered witnesses, to require the grand jury judge to formulate the script by which the prosecutor must question the witness would be highly impractical and most likely ineffective since the questioning of the witness will invariably depend on how the witness answers, on what additional questions the grand jury itself might want asked, and on what other evidence has been brought out during the

16

proceedings. To some extent, such an attempt also runs the risk of usurping the prosecutor's rightful role before the grand jury.

{38} That said, we recognize the possibility that an overzealous prosecutor could call a witness as requested by the target but then intentionally question the witness in a manner intended to keep the witness from providing the grand jury with information that the target wanted before the grand jury. In such instances, the only practical recourse for the target must come post-indictment after the target has the opportunity to review the transcript of the grand jury proceedings to evaluate the fairness of the prosecutor's actions. *See* § 31-6-4(C) and (D) (precluding the presence of the target before the grand jury other than to testify and limiting the presence of the target's attorney to when the target is testifying); § 31-6-8 (limiting preparation of the transcripts of grand jury proceedings to cases in which an indictment is returned). But even then, as discussed above, the target would most likely need to demonstrate prosecutorial bad faith.

{39} By adopting a pre-indictment procedure that requires the involvement of the grand jury judge when a prosecutor does not want to alert the grand jury to the existence of target-offered evidence, the judge's ruling will simultaneously serve as the means for enforcing Section 31-6-11(B) and the remedy for a prosecutor's unjustified reluctance to alert the grand jury to the existence of target-offered evidence. Because the Legislature intended to give the grand jury access to more evidence, not less, the prosecution carries the burden of persuading the grand jury judge that the grand jury should not be alerted to target-offered evidence. In determining whether to require the prosecutor to alert the grand jury to evidence offered by the target, the grand jury judge should be guided by the applicable evidentiary standards set forth in Section 31-6-11 that limit the grand jury to considering "lawful, competent, and relevant" evidence, including evidence "that would disprove or reduce an accusation or otherwise make an indictment unjustified". The ostensible simplicity of these statutory evidentiary standards may belie the potential difficulty in applying them to the particular circumstances in any given case. Nonetheless, we are confident of the ability of our district court judges to make these evidentiary determinations in the same accurate and efficient manner that they do in other contexts on a daily basis. Finally, evenly balanced argument should favor disclosure of the evidence to the grand jury for that body to decide what consideration to give it.

{40} And yet, despite the best efforts of our district court judges, there will undoubtedly be instances when the target or the prosecutor will be dissatisfied with the ruling of the grand jury judge and want further appellate review. Of course, any provision for appellate review has the potential for adding a significant delay to the prosecution's ability to obtain timely indictments. Moreover, without any explicit provision for judicial intervention to resolve disputes arising under Section 31-6-11(B), let alone any mention of appellate review, we are unwilling to recognize a right of appeal from a decision of the grand jury judge under Section 31-6-11(B). *See* NMSA 1978, § 39-3-3(B) (1972) (limiting the state's right to appeal in criminal cases to dismissals and orders suppressing or excluding evidence); *State v. Augustin M.*, 2003-NMCA-065, ¶ 41,

133 N.M. 636, 68 P.3d 182 (ruling that a defendant does not have an immediate right to appeal from the denial of a motion to dismiss an indictment); *see also State v. Smallwood*, 2007-NMSC-005, ¶ 6, 141 N.M. 178, 152 P.3d 821 (recognizing that the Court cannot create appellate jurisdiction through its rule-making authority).

**{41}**     Although we conclude there is no pre-indictment right of appeal from the decision of a grand jury judge under Section 31-6-11(B), we are not foreclosing the possibility that, in an extreme case, a party may still seek review in this Court through an extraordinary writ proceeding. We emphasize, however, the high standard and discretionary nature associated with granting such relief. Therefore, in the absence of appellate review, we anticipate the prompt commencement of grand jury proceedings following any determinations required by the grand jury judge under Section 31-11-6(B).

**CONCLUSION**

**{42}**     In light of the Legislature's clear intent to provide the grand jury with more information from the target of a grand jury investigation, and in light of the judiciary's responsibility to ensure the equitable and efficient operation of the grand jury system, we conclude that the grand jury judge has a role to play when the prosecutor does not want to alert the grand jury to the existence of the target-offered evidence. To allow the prosecutor's screening function to proceed unchecked pre-indictment invites post-indictment inefficiencies into the system. And to assume that all damage flowing from an unjustified indictment can be cured post-indictment is to ignore the lasting injury that even an unsuccessful indictment can inflict.

**{43}**     We therefore remand this matter to the district court to resolve the outstanding disputes between the parties regarding the extent to which the grand jury should be alerted to evidence offered by Petitioner. Because Petitioner has apparently submitted a redrafted letter to the district attorney requesting that the grand jury be alerted to specific evidence, the district attorney should file a motion with the grand jury judge if the district attorney believes that any of the target-offered evidence is inappropriate for submission to the grand jury. The grand jury judge shall then proceed to rule on the motion in a manner consistent with this opinion. Although we endeavor in this opinion to provide the grand jury judge with a workable framework for resolving the disputes in this case, we also request that our Rules of Criminal Procedure for the District Courts Committee consider whether rule amendments are needed based upon the procedure we have outlined here today.

**{44}**     **IT IS SO ORDERED**.

_____
**PATRICIO M. SERNA, Justice**

**WE CONCUR:**

18

_____
**EDWARD L. CHÁVEZ, Chief Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**CHARLES W. DANIELS, Justice**


**Topic Index for *Jones v. Murdoch*, No. 30,977**

**Constitutional Law**
CT-SP         Separation of Powers

**Criminal Procedure**
CA-GJ         Grand Jury

**Evidence**
EV-EX         Exculpatory Evidence

**Statutes**
ST-IP         Interpretation
ST-LI         Legislative Intent