DANIELS, Justice, specially concurring. {42} I agree with what the Court has written about the current law applicable to speedy trial motions in general and about the need in this particular case for a remand to the district court for an evidentiary hearing on Defendant’s speedy trial motion to ensure that the final disposition is based on actual fact, instead of mere conjecture. I write separately to express my concerns about the existing record in this case and, perhaps more importantly in the long run, some thoughts about improved approaches to accommodating an accused’s constitutional right to a speedy trial, the strong interest of the public in having criminal cases determined on their merits, and the judiciary’s task of managing its caseloads responsibly. {43} There is nothing in the record that tells us when the claimed prejudice to this defendant occurred or whether the prejudice was caused by any inappropriate period of delay. As we have noted in Jones v. Murdoch, 2009-NMSC-002, ¶ 18, 145 N.M. 473, 200 P.3d 523, the mere fact of a public criminal prosecution creates immediate and irreparable harm to one’s reputation, employment opportunities, and economic circumstances, without regard to the final resolution of the case. There is no evidence to show that this defendant suffered those consequences in this case because of the last continuance or a previous one or any other particular delay in getting the case to trial. In fact, there is no evidence at all in the record. In assessing claimed prejudice from an alleged denial of the right to a speedy trial, timing is a necessary consideration for both the trial court and the reviewing appellate court. {44} I am also troubled by the district court’s finding, or perhaps more accurately, supposition, that the prosecution had engaged in deceptive and misleading conduct to delay Defendant’s trial. While fraudulent representations to a court by attorneys are obviously matters of serious concern that our courts must respond to and sanction, such serious accusations should not be made lightly. The district court apparently inferred that the prosecutors must have been lying about being ready for trial when they asked for one continuance by representing that a witness was unavailable, because they then worked further on improving their case after receiving the continuance. See, e.g., the remarks of the district court set forth in ¶ 14 of the majority Opinion. Good trial lawyers do not stop working to improve their cases after getting a continuance, no matter what the reason for the continuance. Trial preparation is a never-ending work in progress. I can think of no good reason why our courts should condition a rescheduling request on a party’s ceasing improvement of its case, but if we do intend to impose such a novel limitation, we certainly ought to require fair notice that this is going to be the new rule and not allow the prosecution to be blindsided with an outright dismissal as a sanction for working on its case. In any event, this is a matter that can be clarified at the hearing on remand. {45} On a matter of more systemic concern, I am troubled about the ways in which trial courts traditionally have tried to cope with speedy trial issues, often as a result of inadequate guidance from appellate courts. One set of problems is created by our historical attempts to pigeonhole cases into three judicially-created categories of complexity, followed by our application of three different standards of time measurement and prejudice assessment, depending on which artificial complexity pigeonhole we put the cases into. As exemplified by the uncertainty of categorization in this case, there is no reliable way to put cases into those rigid complexity categories. Each case should be examined as a unique entity, because in reality each case is different. Promulgation of artificial categories and formulas creates the danger that in using them we end up thinking words instead of thoughts and lose sight of what we are doing. {46} I am especially concerned about our judicial branch’s aborting a criminal prosecution on speedy trial grounds after the dismissing court itself has approved all the requested discretionary continuances and, presumably, the validity of the grounds for the motions. In this case, if the trial court had refused to grant a requested continuance, eitherbecause the grounds were insufficient or because postponing the trial would have jeopardized Defendant’s speedy trial rights, the prosecutors would have been on fair notice that they had to be in court on the scheduled date with whatever case they had, even with the inconvenience of substitute counsel or missing witnesses. They would have known that they had to put up or suffer the consequences. As it was, they had the rug pulled out from under them and never got to try. They were first told that the court approved rescheduling the trial and then told that their case was unexpectedly given a death sentence and dismissed without a fair trial, not because they did not appear with a case on the court-scheduled trial date, but because the court exercised its judicial discretion to agree to a change of the trial date before telling them that, as a result of that change, they could no longer prosecute the case at all. {47} The speedy trial guarantee is undeniably important and may often be insufficiently protected. Our courts must find fair ways to enforce it and all other important rights. But in doing so, we should always try to resolve cases on their true merits where possible. A better way to accommodate the rights of a defendant and the legitimate interests of the prosecution is for trial courts to consider, and if appropriate even formally rule on, the question whether a requested recalendaring will result in an infringement of a defendant’s speedy trial rights before a continuance request is ruled on and before the prosecution is left unexpectedly with no alternative of any kind. Courts now have the broad discretion to exercise that kind of control over their own dockets, whether or not we ever revise our criminal procedure rules to mandate that judges inquire into speedy trial consequences before granting a continuance motion. In taking speedy trial concerns into account before postponing trials, instead of afterward, judges can better protect the accused’s right to a speedy trial without sacrificing society’s interest in enforcement of its criminal laws. CHARLES W. DANIELS, Justice